729 P.2d 969

**STATE of Arizona, Appellee,**

v.

**Peter Louis CARREON, Appellant.**

**No. 1 CA–CR 9545.**

Court of Appeals of Arizona,
Division 1, Department B.

Nov. 25, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

OPINION

CORCORAN, Presiding Judge.

Peter Louis Carreon (defendant) appeals from the judgment of conviction and sentence for one count of possession of a narcotic drug (cocaine) for sale with a value in excess of $250.00, a class 2 felony. The state also alleged and proved three prior felony convictions. Defendant was found guilty by a jury and was sentenced to the mandatory minimum sentence of 14 years' imprisonment. Defendant raises one issue on appeal:

> Did the trial court commit reversible error by allowing a police officer to testify that, in his opinion, the drugs in question were possessed for sale rather than for personal use?

On appeal, we view the facts in the light most favorable to sustaining the trial court's rulings. *State v. Printz*, 125 Ariz. 300, 609 P.2d 570 (1980). Arizona Department of Public Safety (DPS) Officers Dale Doucet and Thomas G. Burlile were working at the Memorial Coliseum in Phoenix. They were contacted by radio with a request from a security officer for assistance in handling a disturbance in which defendant had been kicking and striking a vending machine. Officer Doucet, who had trained in narcotics detection, testified that, upon first seeing defendant, he noticed a clear plastic bag (which contained a white substance) and a folded piece of paper partially protruding from defendant's shirt pocket. Officer Doucet removed the bag from defendant's pocket. The bag contained a paper packet of white powder later identified as cocaine. The officer found another packet containing cocaine in defendant's shirt pocket. The officer also found some sheets of paper with names and monetary amounts on them and three packages or "bindles" of money in defend-

ant's pants pockets. A criminalist testified that the packets each contained a usable amount of cocaine.

Defendant objects to a portion of the testimony of Officer Robert Hopper of the Phoenix Police Department. Hopper testified that he had been involved in law enforcement since 1969. While he was a police officer with the United States Air Force, he took a course on the identification of narcotics. After leaving the Air Force, he was employed by the Northern Arizona University Police Department and was assigned to the Flagstaff Metro Narcotics Unit. During that time, he attended the Flagstaff Police Academy where he received training in the identification of common street drugs, information on the manner in which various drugs are packaged and the manner in which street level narcotics dealers and users work. Hopper also attended a Federal Drug Enforcement Administration School at which he received extensive training concerning narcotics. He received further training at the DPS Academy. While in Flagstaff, Hopper worked on undercover narcotics assignments for approximately four years. Hopper then served in the narcotics section of the DPS for seven years, six of which were spent working undercover narcotics assignments at the street level. He testified that, in his role as a narcotics officer, he had purchased and identified cocaine hundreds of times.

Hopper testified that he had identified the white powdery substance found in the two packets which were in defendant's pocket as cocaine. The prosecutor asked Hopper if, based upon his expertise, training and experience on the street, he had an opinion concerning whether the drugs found in defendant's pocket were for personal use or for sale. Hopper testified that he had such an opinion. The prosecutor then asked Hopper the basis for his opinion. He responded that he based his opinion upon his experience. He then described the way in which the bindles of money were found. He testified that the three bindles each contained different quantities of money. He explained that, based upon his experience, drug dealers often keep

packets of money separate as a way of accounting for the money. The prosecutor then asked Hopper to explain why he believed that the manner in which the drugs were packaged and the amount of drugs indicated that they were being possessed for sale rather than for personal use. Hopper responded that if a person is carrying drugs for personal use, he will normally carry all of his drugs in a little vial. He indicated that the size of the packages found in defendant's possession, in addition to the fact that there were three papers, indicated to him that the drugs were possessed for sale.

At that point, defense counsel objected to that testimony. The trial court instructed the prosecutor to ask Hopper his opinion and that defense counsel could then object. When the prosecutor asked Hopper if he had an opinion concerning whether the drugs in this case were possessed for sale or for personal use, the following exchange took place:

MR. MARTIN [defense counsel]: I object on the grounds of foundation. It calls for a conclusion. You are asking the witness at this point in time to give his opinion with respect to an ultimate fact.

It could be argued certainly, Judge, but I think it's improper for him to give that kind of—

THE COURT: Objection is overruled. The witness may answer, and then you can proceed with your questions.

. . . .

THE WITNESS: Yes, I have an opinion. And my opinion is based on my experience that these drugs were possessed to sell. They were possessed for sale.

Defendant claims that the admission of the officer's opinion that the drugs in this case were possessed for sale constitutes reversible error under the supreme court's decision in *Fuenning v. Superior Court,* 139 Ariz. 590, 680 P.2d 121 (1983). We do not agree.

The supreme court in *Fuenning* discussed in *dicta* the admissibility of a police officer's opinion that a defendant was in-

toxicated. The court stated that it would usually be proper to ask such a witness whether the defendant displayed the symptoms of intoxication and, perhaps, to ask whether the defendant's conduct seemed influenced by alcohol. However, the court indicated that testimony which constitutes an opinion of guilt or innocence would be more prejudicial than beneficial and would therefore be inadmissible. 139 Ariz. at 605, 680 P.2d at 136.

As this court stated in *State v. Bojorquez*, 145 Ariz. 501, 702 P.2d 1346 (App. 1985), we do not believe that the supreme court in *Fuenning* set forth a *per se* rule of inadmissibility concerning such testimony. Under *Fuenning*, the trial court is required to consider whether the probative value of the officer's opinion concerning the defendant's intoxication outweighs that testimony's prejudicial impact. *Bojorquez; see also* rule 403, Arizona Rules of Evidence. Moreover, as we stated in *Bojorquez*, the statement in *Fuenning* was *dicta* and did not expressly overrule existing case law allowing such testimony.

Rule 704, Arizona Rules of Evidence, provides that opinion testimony is not excludable merely because it embraces an ultimate issue of fact. Rule 704 and the comment thereto state as follows:

*Opinion on Ultimate Issue.* Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

*Comment*

Some opinions on ultimate issues will be rejected as failing to meet the requirement that they assist the trier of fact to understand the evidence or to determine a fact in issue. Witnesses are not permitted as experts on how juries should decide cases.

The trial court has the discretion to allow expert testimony where such testimony may assist the jury in deciding a contested issue. *State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73 (1986). The function of an expert is to provide testimony on subjects which are beyond the average juror's common

sense, experience and education. Rule 702, Arizona Rules of Evidence; *see also Lindsey.*

A police officer's expert testimony concerning whether drugs were possessed for sale has long been admissible in this state. *See State v. Keener*, 110 Ariz. 462, 520 P.2d 510 (1974); *State v. Arce*, 107 Ariz. 156, 483 P.2d 1395 (1971); *State v. Prevost*, 118 Ariz. 100, 574 P.2d 1319 (App.1977). We do not believe that *Fuenning* affects that long-standing rule in Arizona. Hopper was clearly qualified to testify as an expert witness concerning the identification of narcotics, the way in which narcotics are packaged when they are for sale as opposed to when they are for personal use, and the general activities and methods of street-level narcotics dealers. Unlike the question of whether a person is intoxicated, the average juror is not familiar with such matters. The testimony presented by such an expert witness will definitely "assist the trier of fact to understand the evidence or to determine a fact in issue." Comment, rule 704.

We find that if counsel has laid a proper evidentiary foundation, testimony concerning whether drugs were possessed for sale or for personal use will assist the trier of fact, and that testimony does not impermissibly invade the province of the jury as to how to decide the case. *See, e.g., State v. Huey*, 145 Ariz. 59, 699 P.2d 1290 (1985) (expert testimony concerning the rape trauma syndrome is admissible regarding lack of consent, but is not admissible as to the issue of guilt or innocence). Such testimony is distinguishable from a police officer's opinion concerning whether or not a driver was intoxicated at the time of his arrest, and is clearly admissible under rule 704.

We affirm the judgment of conviction and the sentence.

GREER and KLEINSCHMIDT, JJ., concur.