IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

MAR 25 2008

COURT OF APPEALS
DIVISION TWO

THE STATE OF ARIZONA,              )
                                   )        2 CA-CR 2007-0091
                      Appellee,    )        DEPARTMENT B
                                   )
              v.                   )        O P I N I O N
                                   )
BILLIE MARIE FORNOF,               )
                                   )
                      Appellant.   )
_____  )


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20061071

Honorable Howard Fell, Judge Pro Tempore
Honorable Edgar B. Acuña, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and David A. Sullivan                          Tucson
                                                        Attorneys for Appellee


Law Office of Thomas E. Higgins
  By Thomas E. Higgins                                              Tucson
                                                         Attorney for Appellant

V Á S Q U E Z, Judge.

¶1	A jury found appellant Billie Marie Fornof guilty of possession of a narcotic drug for sale and possession of drug paraphernalia. On appeal, Fornof argues that police lacked sufficient basis to stop the car in which she had been riding as a passenger and the trial court therefore erred when it denied her motion to suppress the evidence officers found on her person. She also contends the court erred by permitting an expert to testify that he believed the drugs she had possessed were for sale, rather than personal use. For the reasons discussed below, we affirm.

## Facts and Procedural Background

¶2	We view the evidence presented in the light most favorable to sustaining the convictions. *State v. Cropper*, 205 Ariz. 181, ¶ 2, 68 P.3d 407, 408, *supp. op.*, 206 Ariz. 153, 76 P.3d 424 (2003). At approximately 11:40 p.m. on March 19, 2006, Tucson Police Sergeant Tony Kadous was driving a marked patrol car north towards the intersection of 12th Avenue and President Street when he noticed a red car that had stopped on President Street, just east of the intersection on the right side of the road. A pedestrian was reaching into the passenger side of the vehicle and exchanging something with the female passenger. Kadous slowed down and turned onto President, coming up behind the car. The pedestrian looked at him and walked quickly away. As the red car drove away, Kadous activated his emergency flashing lights, and the red car stopped after traveling about another hundred feet. Kadous asked the driver of the car and the passenger for their names and, after further investigation, discovered an outstanding arrest warrant for Fornof, who was the passenger.

2

Kadous arrested Fornof and, searching her incident to the arrest, found a torn-off corner of a sandwich bag in her pocket, containing a pea-sized quantity of what appeared to be powder cocaine. A female police officer assisted Kadous, and after a more thorough search, found a number of rocks of crack cocaine in Fornof's underwear.

¶3        Fornof was charged with possession of a narcotic drug for sale and possession of drug paraphernalia. A jury found Fornof guilty on both charges, and the trial court sentenced her to a mitigated, three-year prison term on the possession for sale charge and a concurrent, presumptive, one-year prison term on the paraphernalia charge. This appeal followed; we have jurisdiction under A.R.S. § 13-4033(A).

## Discussion

### Reasonable suspicion for vehicle stop

¶4        Fornof challenges the trial court's denial of her motion to suppress evidence, claiming the search incident to her arrest violated the Fourth Amendment to the United States Constitution. Specifically, she contends Sergeant Kadous lacked reasonable suspicion to stop the vehicle in which she had been riding as a passenger before he conducted that search.

¶5        An investigatory stop of a vehicle constitutes a seizure under the Fourth Amendment. *State v. Richcreek*, 187 Ariz. 501, 505, 930 P.2d 1304, 1308 (1997) ("When the blue lights on the patrol car begin to flash, the person being followed does not feel free to ignore them and drive on."). Thus, an officer may only conduct such a stop if the totality

of the circumstances "raise[s] a justifiable suspicion that the *particular individual to be detained is involved in criminal activity*." *State v. Graciano*, 134 Ariz. 35, 37, 653 P.2d 683, 685 (1982). This "reasonable suspicion" requirement for an investigatory stop, first articulated in *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), falls short of the probable cause required for an arrest. As the United States Supreme Court stated in *Adams v. Williams*:

> In *Terry* this Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, [*T*]*erry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

407 U.S. 143, 145-46 (1972), *quoting Terry*, 392 U.S. at 22 (internal citations omitted). Although we review de novo whether the police had reasonable suspicion to justify an investigatory stop, *State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996), we defer to the trial court's findings of fact and "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers," *Ornelas v. United States*, 517 U.S. 690, 699 (1996). Evidence derived from a stop not based on reasonable suspicion is "fruit of the poisonous tree" and must be suppressed. *Richcreek*, 187 Ariz. at 506, 930 P.2d at 1309.

4

¶6     Our assessment of reasonable suspicion is based on the totality of the circumstances, considering such objective factors as the suspect's conduct and appearance, location, and surrounding circumstances, such as the time of day, and taking into account the officer's relevant experience, training, and knowledge. *See United States v. Arvizu*, 534 U.S. 266, 275 (2002); *Graciano*, 134 Ariz. at 37, 653 P.2d at 685; *see also United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975) ("Officers may consider the characteristics of the area in which they encounter a vehicle."); *Illinois v. Wardlow*, 528 U.S. 119, 139 (2000) (time of day a factor).

¶7     Although Fornof acknowledges this totality of the circumstances test, she also contends we should follow the reasoning of the Tenth Circuit Court of Appeals in *United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997). There the court, quoting *Karnes v. Skrutski*, 62 F.3d 485, 496 (3rd Cir. 1995), stated "it is 'impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation.'" But, this reasoning conflicts with the totality of the circumstances test articulated by our supreme court, because it invites the type of piecemeal evaluation of the innocence of each individual factor rejected by the United States Supreme Court. *See Arvizu*, 534 U.S. at 274; *Graciano*, 134 Ariz. at 37-38, 653 P.2d at 685-86. Thus, we decline to follow it. *See State v. Sullivan*, 205 Ariz. 285, ¶ 15, 69 P.3d 1006, 1009 (App. 2003) (court of appeals may not disregard decisions of supreme court); *see also* U.S. Const. art. VI, cl. 2.

¶8 In reviewing a motion to suppress, we consider only the evidence presented at the suppression hearing and view it in the light most favorable to upholding the trial court's factual findings. *In re Ilono H.*, 210 Ariz. 473, ¶ 2, 113 P.3d 696, 697 (App. 2005). Here, Kadous testified at the suppression hearing that he had stopped the car after seeing a pedestrian "standing next to the passenger side of the vehicle. The vehicle was stopped and he was reaching in. They were doing an exchange. The [female] passenger . . . was also handing [him] something. I didn't know what it was at the time." He stated that his initial suspicion that illegal activity was taking place was confirmed when the pedestrian looked at him and walked off quickly.

¶9 At the time of the exchange, around 11:40 p.m., the car was about one hundred feet from the intersection of 12th Avenue and President Street, which Kadous further testified, "had a history of drug and prostitute problems with loitering and drug sales and usage," and that based on his training and experience, the activity he observed was "indicative of . . . a possible drug exchange." Taking into account Kadous's nineteen years of police experience, the court found the exchange he observed, late at night, in an area known for drug transactions, "coupled with the individual leaving in a quick manner as soon as he sees a police officer," was sufficient grounds for reasonable suspicion. It therefore denied Fornof's motion to suppress.

¶10 Fornof argues "[a]t best all . . . Kadous had was a suspicion or hunch that the individuals were involved in criminal activity." She quotes *Graciano* for the proposition

6

that "[t]o uphold the stop in question on the basis of these observed circumstances would subject many innocent individuals to just the type of intrusions prohibited by the [F]ourth [A]mendment." *Id.* at 38, 653 P.2d at 686.

¶11 Our inquiry into whether an officer possessed reasonable suspicion is fact specific. *State v. Valle*, 196 Ariz. 324, ¶ 17, 996 P.2d 125, 130 (App. 2000), *citing Ohio v. Robinette*, 519 U.S. 33, 39 (1996). Neither party cites any case involving similar facts that resolves the issue of whether an officer's observation of an apparent hand-to-hand exchange between two people in a specific location known for drug activity is sufficient to give rise to a reasonable articulable suspicion of illegal activity.[1]

¶12 We note that in the cases the trial court cited in denying Fornof's motion to suppress, the grounds for reasonable suspicion were arguably more substantial than in the current case. *Arvizu*, 534 U.S. 266, *State v. O'Meara*, 198 Ariz. 294, 9 P.3d 325 (2000), and *State v. Riley*, 196 Ariz. 40, 992 P.2d 1135 (App. 1999), involved reasonable suspicion grounded in cumulative information that had been gathered from an extended period of observation or investigation and/or based on a clear-cut violation of traffic laws.[2]

---

[1]Fornof relies primarily on *United States v. Sprinkle*, 106 F.3d 613 (4th Cir. 1997), for the proposition that such an exchange does not give rise to reasonable suspicion. However, that case is distinguishable because the officer could see the hands of two men huddled together in a car and had observed that they were neither exchanging nor concealing anything. *Id.* at 617.

[2]A fourth case mentioned, but without citation, by the trial court at the suppression hearing, *State v. Killian*, was not cited by the parties, and there appears to be no Arizona case of that name addressing the issue of reasonable suspicion.

¶13　　　　In both *O'Meara*, 198 Ariz. 294, ¶ 5, 9 P.3d at 326, and *Riley*, 196 Ariz. 40, ¶¶ 11, 15, 992 P.2d at 1139, 1140, traffic violations provided reasonable suspicion for the initial stop. In *O'Meara*, prior to the stop, officers had also observed a number of men loitering in front of a store, switching back and forth from one car to another, driving away, and making several U-turns, consistent with the behavior of a narcotics buyer giving his car to the seller to take it to the "stash house" for loading. 198 Ariz. 294, ¶¶ 2-4, 11, 9 P.3d at 326-27. After stopping one of the cars for speeding, officers noticed a strong odor of fabric softener coming from the trunk, again consistent with the practice of drug traffickers who use such products to mask the odor of drugs. *Id.* ¶ 4. The court concluded that "looking at the whole picture in this case, the car switching, the U-turns, and the fabric softener, there is no doubt that [the officer] had reasonable suspicion to detain O'Meara while they were waiting for the drug detection dog." *Id.* ¶ 11.

¶14　　　　And in *Riley*, this court found that a police officer had reasonable suspicion to continue his investigation after the initial stop following a high-speed chase. 196 Ariz. 40, ¶¶ 11, 15, 992 P.2d at 1139-40. There, the driver was "unable to provide the vehicle owner's name or phone number, claimed not to know his passenger's last name, possessed questionable identification, was sweating despite the winter temperature, and claimed to be going home, but was headed in the opposite direction from the address on his temporary license." *Id.* ¶ 15. The officer asked the driver to step out of the vehicle and, when he ignored instructions to keep his hands out of his pockets, "patted him down" and found two

large bundles of cash in bank wrappers. *Id.* ¶ 12. The officer requested Riley, a passenger in the vehicle, to step out and asked whether he was carrying anything that would hurt the officer. *Id.* ¶ 13. When Riley reached for his waistband, the officer pushed him against the car, conducted a pat-down search, and found two handguns. *Id.* Under these circumstances, we concluded the officer's reasonable concern for his safety justified the pat-down searches and the trial court did not err in denying the motion to suppress the evidence. *Id.* ¶ 16.

¶15 Similarly, in *Arvizu*, 534 U.S. at 272-73, a total of ten factors were involved in an officer's decision to make an investigatory stop in the area of the United States-Mexico border. These included the fact that a minivan containing two adults and three children was on a back road that took it around a vehicle checkpoint at a time when the area was regularly unpatrolled due to a Border Patrol shift change; its route was not taking it to or from any known recreation areas; the children's knees were unusually high as if their feet were on top of some cargo on the floor of the van; and the van's occupants were behaving oddly, with all three children waving in a strange, mechanical manner for four or five minutes after the officer began following them in his patrol vehicle. *Id.*

¶16 Conversely, the cases cited by Fornof in support of her contention that Arizona courts have found no reasonable suspicion under more suspicious circumstances contain *less* suspicious facts. In *State v. Rogers*, 186 Ariz. 508, 509, 924 P.2d 1027, 1028 (1996), officers merely observed two men emerge from behind some bushes in a darkened residential area, walk down the middle of the street, and stare at them, while in *State v.*

9

*Stricklin*, 191 Ariz. 245, 246, 955 P.2d 1, 3 (App. 1996), an officer observed a man standing next to a closed gas station and peering around the corner. In neither case was the suspicious conduct as well defined as the exchange observed in the current case.

¶17 The circumstances in the present case fall somewhere in the middle of the cases relied upon by the trial court on the one hand and Fornof on the other. Courts in other jurisdictions have concluded that "[a]n officer's observation of hand-to-hand movements between persons in an area known for narcotics transactions, without more, does not provide a founded suspicion of criminal activity." *Belsky v. State*, 831 So. 2d 803, 804 (Fla. App. 2002); *see State v. Ellington*, 495 N.W.2d 915, 919-20 (Neb. 1993) (collecting cases from Alabama, California, Florida, Georgia, Louisiana, and Texas); *State v. Kuhn*, 517 A.2d 162, 165 (N.J. Super. 1986) (collecting New Jersey cases).[3] But when, as in the current case, an officer observes items changing hands, when the transaction takes place in a specific location known for drug-related activity, and when it takes place late at night, an officer's otherwise unparticularized suspicions may be elevated to the level of reasonable suspicion. *See State v. Singleton*, 128 P.3d 28, 31 (Utah App. 2005) ("observation of a hand-to-hand exchange in [a particular trailer park] known for drug trafficking . . . formed a sufficient and independent basis for reasonable suspicion"); *Lambright v. State*, 487 S.E.2d 59, 61 (Ga. App. 1997) ("[officer]'s suspicions became articulable the moment he

---

[3]Cases from other jurisdictions may be persuasive in our determination of reasonable suspicion. *See In re Ilono H.*, 210 Ariz. 473, ¶ 12, 113 P.3d 696, 700 (App. 2005).

saw the hand-to-hand exchange . . . at a known [drug-dealing] location"); *see also United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993) ("area's propensity toward criminal activity [and] . . . lateness of the hour . . . may raise the level of suspicion"). In addition, a suspect's hasty departure from the scene, although falling short of flight, may further support an officer's reasonable suspicion. *See State v. Butler*, 415 S.E.2d 719, 722-23 (N.C. 1992) (defendant's immediately walking away after making eye contact with officers an additional factor).[4]

¶18 The trial court acknowledged that this was "not a strong case by the State, but it's strong enough . . . to rule that the stop was based on a reasonable suspicion." We agree this is a close case, and absent any single factor in the totality of the circumstances giving rise to reasonable suspicion in this case, we cannot say our decision would be the same. However, "[t]he intrusion upon privacy associated with this stop was limited and was 'reasonably related in scope to the justification for [its] initiation.'" *United States v. Cortez*, 449 U.S. 411, 421 (1981), *quoting Terry*, 392 U.S. at 29. Thus, giving due weight to the court's factual findings, we concur with its conclusion.

¶19 We therefore find that the officer's observation of items changing hands, late at night, at a specific intersection he knew had high levels of drug-related activity, and the

___

[4]On appeal, the state attempts to bolster the trial court's findings by arguing that the pedestrian had been behaving "furtively" and by construing the car's movements as "evasive" or even as "attempted flight." However, we find no evidence to support the state's argument and, indeed, the court made no such findings.

precipitous departure of one of the parties to the transaction when he saw the officer, was sufficient to justify the vehicle stop that led to Fornof's arrest and the discovery of cocaine on her person.[5]

**Expert testimony**

¶20 Fornof next argues the trial court erred by permitting an expert to testify that he believed the quantity of drugs she had possessed were for sale, rather than personal use.[6] At trial, the state called Tucson Police Department Detective Lonnie Bynum as an expert witness on the sale and use of cocaine base, commonly referred to as crack cocaine. He testified that the cocaine base possessed by Fornof had a street value of $4,360, that cash found on Fornof—predominantly $20 bills—was consistent with denominations used in drug transactions, and that if the crack cocaine were for personal use he would also expect

---

[5]We assign less weight than the trial court to the "subjective element" of Sergeant Kadous's law enforcement experience as a factor supporting reasonable suspicion here. *See State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 119, 927 P.2d 776, 779 (1996) (totality of circumstances analysis includes "evaluat[ing] subjective elements, such as agent's training and experience). Although an officer's level of experience may well add to the totality of objective circumstances justifying a stop in many cases, *see Brown v. Texas*, 443 U.S. 47, 52 n.2 (1979) (experienced officer may be able to "perceive significance to conduct which would be wholly innocent to the untrained observer"), the state failed to introduce any evidence or elicit specific testimony relating Officer Kadous's considerable years of experience to the suspicious conduct he observed.

[6]We are not persuaded by the state's argument that Fornof forfeited this issue because she objected at trial that the opinion "call[ed] for a legal conclusion and [invaded] the purview of the jury" but on appeal "urges [us] to overturn long-established Arizona precedent and forbid police officers from opining about such matters in all cases." "An objection is sufficiently made if it provides the judge with an opportunity to provide a remedy." *State v. Fulminante*, 193 Ariz. 485, ¶ 64, 975 P.2d 75, 93 (1999).

12

to see some means of smoking it such as a "glass pipe or altered can"; no such item was found on Fornof. Finally, over Fornof's objection, he stated his opinion that the forty-three grams of cocaine base involved in this case were possessed for sale.

¶21 In support of her argument, Fornof relies solely on Connecticut cases and concedes that her argument would require us to make a ruling contrary to *State v. Carreon*, 151 Ariz. 615, 729 P.2d 969 (App. 1986). In that case, Division One of this court rejected the defendant's contention that the admission of an officer's expert opinion that the drugs were possessed for sale constituted reversible error. *Id.* at 616, 729 P.2d at 970. The court noted Rule 704, Ariz. R. Evid., provides that opinion testimony "is not excludable merely because it embraces an ultimate issue of fact" but may be admitted if it assists the jury in understanding the evidence and that "[a] police officer's expert testimony concerning whether drugs were possessed for sale has long been admissible in this state." *Id.* at 617, 729 P.2d at 971. "[W]e generally consider 'decisions of coordinate courts as highly persuasive and binding.'" *State v. Romero*, 216 Ariz. 52, n.2, 162 P.3d 1272, 1273 n.2 (App. 2007), *quoting Castillo v. Indus. Comm'n*, 21 Ariz. App. 465, 471, 520 P.2d 1142, 1148 (1974). Furthermore, as the state points out, Fornof's argument is also contrary to the same holding reached by our supreme court in *State v. Keener*, 110 Ariz. 462, 520 P.2d 510 (1974), which we have no authority to disregard. *See State v. Newnom*, 208 Ariz. 507, ¶ 8, 95 P.3d 950, 951 (App. 2004) (court of appeals has no authority to overrule or disregard

13

supreme court). The trial court therefore did not err in admitting Bynom's opinion testimony.

## Disposition

**¶22** For the reasons stated above, we affirm.


_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge