NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

RAMON LUNA BUENO, *Appellant*.

No. 1 CA-CR 20-0085

FILED 3-18-2021

Appeal from the Superior Court in Maricopa County
No. CR2014-149887-001
The Honorable Ronda R. Fisk, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee*

KBUnited, LLC, Phoenix
By Kerrie M. Nelson
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge David B. Gass delivered the decision of the Court, in which
Judge Michael J. Brown and Judge David D. Weinzweig joined.

**G A S S**, Judge:

¶1          Ramon Luna Bueno appeals his convictions and sentences for nine felony counts arising out of two events a little less than a year apart. He argues some convictions resulted from the fruits of an illegal seizure in violation of the Fourth Amendment of the U.S. Constitution. He argues the other convictions should be vacated because the superior court failed to declare a mistrial after expert testimony on Bueno's gang affiliation and tattoos. We disagree and affirm his convictions, but we vacate his sentences for three counts and remand for resentencing in accord with *State v. Arevalo*, 249 Ariz. 370 (2020).

## FACTUAL AND PROCEDURAL HISTORY

¶2          This court reviews the facts in the light most favorable to sustaining the juries' verdicts, resolving all reasonable inferences against Bueno. *See State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015).

### A.      The Drug Stop: December 2013

¶3          Law enforcement officers were surveilling a home when they saw a white truck leave. The surveilling officers alerted two nearby officers who initiated a stop after discovering the truck's license plate was suspended. Bueno was driving and had a passenger.

¶4          During the stop, Bueno consented to a pat-down search, during which officers found a glass pipe and syringe. Bueno later admitted the pipe was his and he used it to smoke methamphetamine. The pipe contained 145.3 milligrams of methamphetamine.

### B.      The Officer Shooting: October 2014

¶5          Bueno was one of four passengers in a car when an officer pulled the car over. Bueno and another man sat in the back seat by the windows. Bueno and the other man were members of the criminal street gang known as the Coffelt Jets. The Coffelt Jets are affiliated with the Mexican Mafia—a prison gang with members both in and out of custody.

¶6          Officer J.C. approached the car on the driver's side. As the officer approached, the driver heard Bueno utter he is "not going in." J.C. gathered identifying information and returned to his patrol car to run warrant checks on everyone. J.C. called for assistance and waited until two other officers arrived, at which point the three approached the car. J.C. told

Bueno he knew Bueno provided a false identity. When J.C. asked Bueno for a social security number to prove his identity, Bueno shot J.C. in the face.

¶7 A shootout followed, and the car's occupants fled. Law enforcement later found and arrested both Bueno and the fellow gang member. J.C. required seventeen surgeries but survived.

## C. The Drug Charges and Trial

¶8 Based on the drug stop, the State charged Bueno with possession or use of dangerous drugs and possession of drug paraphernalia. The State tried Bueno on these charges first.

¶9 Bueno moved to suppress the evidence of the stop and the evidence flowing from the search, arguing the officers lacked a reasonable suspicion when they stopped the truck. Bueno focused his argument on the two plate check entries on the computer aided dispatching (CAD) report summary produced at the suppression hearing. One of the two arresting officers testified they performed two plate checks related to the truck Bueno drove. The CAD summary shows both plate checks. The CAD summary was introduced at the suppression hearing, but it only contains basic identifying information. It did not contain the reports produced after each plate check.

¶10 Even so, the officer testified about his recollection of the two plate checks and the two reports. The officer said the report produced from the first plate check revealed the truck's plate was suspended. Consistent with the CAD summary, the officer said they received the results of the first plate check at 10:48:02 p.m., which produced the report indicating the plate was suspended. This first plate check is not associated with the incident number for the stop. The officers then initiated a stop and conducted a second plate check so the plate information would "be included in the incident number" associated with the stop. The results of the second plate check posted at 10:59:37 p.m., exactly 1 second *after* the officers initiated the stop at 10:59:36 p.m.

¶11 The superior court denied Bueno's motion to suppress. The jury convicted Bueno as charged.

## D. The Shooting Charges and Trial

¶12 Based on the officer shooting, the State charged Bueno with the following crimes: count 1, attempted first-degree murder; counts 2–4, aggravated assault; count 5, drive-by shooting; counts 6 and 10, misconduct

involving weapons; and counts 7–9, threatening or intimidating enhanced as class 6 felonies. The State alleged several aggravating factors, including an allegation Bueno committed the offenses with the intent to promote, further, or assist any criminal conduct by a criminal street gang.

¶13        After the trial on the drug charges, the State tried Bueno on seven of the nine remaining counts—excluding the misconduct involving weapons counts (6 and 10). During the second trial, the State's gang expert testified about Bueno's affiliation with the Coffelt Jets and the Mexican Mafia. The expert explained the Mexican Mafia has members both in and out of prison, and one does not need to go to prison to become a member. The gang leadership directs members to avoid incarceration so out-of-custody members can make money for the gang and protect communication channels. The expert also testified members earn prestige by committing acts of violence in front of other members.

¶14        The expert then talked about Bueno's tattoos. He explained some of Bueno's tattoos are "political ink," which are earned and bring status in the gang. Others clearly identified the Coffelt Jets, the Mexican Mafia, and other gang iconography. The prosecutor asked the expert if it was significant Bueno had "Ariza" tattooed around his right arm, to which the expert responded:

> Yes. You can't see it entirely in this photograph, but, Ariza is basically slang for Arizona. Mafia members have their Arizona patch, often AZ, often just the outline of the state or Ariza in this case, and that would be considered political. You see Raza or race. There's a lot of pride for the Hispanic tradition within the mafia, so they use and sometimes abuse the race card. Once you get inside prison, it becomes like the Aryan Brotherhood and the Peckerwoods and the Skinheads for the whites. Arizona Mexican Mafia, maybe Grandel for the Hispanics, Border Brothers. And then the Black Guerrilla Family, the Mau Mau for the African American groups within prison. You see the XIX for 19 identifying, again, his affiliation with Coffelt Jets.

Bueno objected to this testimony and moved for a mistrial, arguing the testimony about the tattoos and the status they connote in prison unfairly prejudiced his trial. The superior court denied the motion.

¶15        The jury convicted Bueno on counts 2, 3, 4, 5, 7, 8, and 9, but failed to reach a verdict on count 1. After the second trial, the superior court

sentenced Bueno and—on the State's motion—dismissed counts 1, 6, and 10 without prejudice. Bueno timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 13-4031, -4033.A.1.

## ANALYSIS

### I.  Officers had reasonable suspicion supporting a stop of the truck.

¶16         Bueno argues the superior court erred by not suppressing the drug evidence obtained after his traffic stop because the evidence was the fruit of an unconstitutional seizure under the Fourth Amendment. He does not raise any issue under article II, section 8, of the Arizona Constitution. He argues officers did not learn the truck's plate was suspended until 10:59:37 p.m. and, therefore, lacked reasonable suspicion before initiating the stop.

¶17         This court reviews the denial of a motion to suppress for abuse of discretion. *State v. Paredes*, 167 Ariz. 609, 610 (App. 1991). The superior court "abuses its discretion when the reasons given by the court for its actions are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Penney*, 229 Ariz. 32, 34, ¶ 8 (App. 2012) (quotation omitted). "We look only to the evidence presented at the suppression hearing . . . and we view the facts in the light most favorable to upholding the trial court's ruling." *State v. Moore*, 183 Ariz. 183, 186 (App. 1995) (citations omitted). "[W]e defer to the trial court's factual findings, including findings on credibility and the reasonableness of the inferences drawn by the officer, but we review de novo mixed questions of law and fact and the trial court's ultimate legal conclusion[]" of whether a search was lawful. *State v. Teagle*, 217 Ariz. 17, 22, ¶ 19 (App. 2007).

¶18         "An investigatory stop of a vehicle constitutes a seizure under the Fourth Amendment." *State v. Fornof*, 218 Ariz. 74, 76, ¶ 5 (App. 2008). Officers may stop a vehicle within the Fourth Amendment's bounds when the totality of the circumstances raise "reasonable suspicion" of criminal activity or civil traffic violations. *Id.*; *State v. Starr*, 222 Ariz. 65, 69, ¶¶ 11–12 (App. 2009). If officers do not have reasonable suspicion to support a vehicle stop, any evidence derived from the stop must be suppressed as "fruit of the poisonous tree." *Fornof*, 218 Ariz. at 76, ¶ 5.

¶19         Here, we find no abuse of discretion. At the suppression hearing, the officer testified they had reasonable suspicion to conduct a traffic stop based on the vehicle's suspended plate, which the officers discovered "[t]he first time [they] ran the plate" at 10:48:02 p.m. The

superior court implicitly found this testimony credible. The superior court also considered the information contained in the CAD summary. This court defers "to the trial court's factual findings, including findings on credibility." *Teagle*, 217 Ariz. at 22, ¶ 19. Reasonable evidence, therefore, supports the superior court's finding of reasonable suspicion justifying the vehicle stop. *See Fornof*, 218 Ariz. at 76, ¶ 5.

## II.     The superior court did not abuse its discretion by declining to declare a mistrial.

¶20       Bueno argues the superior court erred by not declaring a mistrial after the State's gang expert testified about Bueno's gang-affiliated tattoos. He argues the testimony about his tattoos and their relation to gangs like the Mexican Mafia prejudiced his defense and created an unfair association between Bueno and prison.

¶21       This court reviews a superior court's denial of a mistrial motion for abuse of discretion. *State v. Mills*, 196 Ariz. 269, 271, ¶ 6 (App. 1999). "[B]ecause the trial judge is in the best position to assess the impact of a witness's statements on the jury, we defer to the trial judge's discretionary determination." *State v. Dann*, 205 Ariz. 557, 570, ¶ 43 (2003). When the superior court weighs a motion for mistrial after a witness gives unsolicited, inadmissible testimony, the superior court should consider "(1) whether the remarks called to the attention of the jurors matters that they would not be justified in considering in determining their verdict, and (2) the probability that the jurors, under the circumstances of the particular case, were influenced by the remarks." *State v. Doty*, 232 Ariz. 502, 506, ¶ 17 (App. 2013) (quotation omitted).

¶22       The superior court did not abuse its discretion by denying Bueno's motion for a mistrial because the expert's testimony did not draw the jury's attention to impermissible matters. *See State v. Vigil*, 195 Ariz. 189, 193, ¶ 26 (App. 1999) (evidence is unduly prejudicial if it tends to suggest "decision on an improper basis, such as emotion, sympathy or horror"). Bueno claims the expert implied Bueno was previously incarcerated, but the record shows otherwise. The expert generally explained the meaning of tattoos on gang members, whether in prison or not. When asked if a member of the Mexican Mafia must have been in prison or jail, the expert responded "absolutely not by definition, no." Bueno does not explain how he suffered prejudice from this testimony, and we will not second guess the superior court's implicit rejection of Bueno's contention prejudice existed. *See Dann*, 205 Ariz. at 570, ¶ 43.

¶23 Further, evidence of Bueno's gang affiliation was relevant at trial. *See State v. Jackson*, 186 Ariz. 20, 26 (1996) ("The trial judge's original ruling allowing the state to offer evidence of gang membership to prove motive was correct."). Indeed, the prosecutor argued Bueno's gang affiliation provided a motive for shooting J.C. at several points in closing. The prosecutor argued Bueno's motives were: (1) earning prestige in the gang by committing a violent act in front of another member; and (2) avoiding being taken into custody as the gang directs. Moreover, the State alleged "the offense[s] [were] committed with the intent to promote, further, or assist any criminal conduct by a criminal street gang" as an aggravating factor. These were all material issues for the jury to decide. *See id.*

¶24 In sum, the expert's testimony did not cause Bueno unfair prejudice or draw the jury's attention to "matters that they would not be justified in considering" when reaching their verdict. *See Doty*, 232 Ariz. at 506, ¶ 17.

## III.    Three of Bueno's sentences are unconstitutional under *Arevalo*.

¶25 Bueno's threatening or intimidating offenses were all enhanced from misdemeanors to felonies under paragraph 13-1202.B.2. This enhancement violates Bueno's due process rights. *See Arevalo*, 249 Ariz. at 376, ¶ 20 (because paragraph 13-1202.B.2 "permits sentencing enhancement absent any nexus between gang membership and the crime . . . the statute [is] facially invalid"). Accordingly, the enhancement of counts 7, 8, and 9 must be vacated.

## CONCLUSION

¶26 We affirm Bueno's convictions and sentences for counts 2, 3, 4, 5, 11, and 12. We vacate Bueno's sentences for counts 7, 8, and 9 and remand the case to the superior court for resentencing of those counts as class 1 misdemeanors.

