NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

RAYMOND JAMES KNIGHT, *Appellant.*

No. 1 CA-CR 22-0306

FILED 07-18-2024

---

Appeal from the Superior Court in Yavapai County
No. P1300CR202100982
The Honorable Debra R. Phelan, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Tucson
By Jacob R. Lines
*Counsel for Appellee*

Huss Law, PLLC, Tempe
By Jeremy L. Huss
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Andrew M. Jacobs joined.

---

**T H U M M A**, Judge:

¶1        Defendant Raymond James Knight appeals his convictions and resulting sentences for sale or transportation of drugs (methamphetamine) and possession of drug paraphernalia, contending the superior court erred by denying his motion to suppress. Because Knight has shown no error, his convictions and resulting sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        An Arizona Department of Public Safety Detective was the sole witness at the evidentiary hearing on the motion to suppress. *See State v. Hausner*, 230 Ariz. 60, 70 ¶ 23 (2012) ("We consider the evidence presented at the suppression hearing and view the facts in the light most favorable to sustaining the trial court's ruling."). One afternoon in July 2021, the Detective was in a marked patrol car, parked in the median of Interstate 17 near Highway 69 in Yavapai County. He saw a white Toyota Camry, with a "fleet" Colorado license plate (indicating it was a rental car), driving too close behind the car in front of it. The Detective testified that the Camry's driver and passenger (Knight) were sitting in an upright position, staring straight ahead and, as he pulled up beside the car, they remained in the same position.

¶3        The Detective initiated a traffic stop for following another car at an unsafe distance, ultimately issuing a warning. The Detective testified that the entire interaction took about 15 minutes. The events leading up to the warning being issued (about 10 of those 15 minutes) provide context for Knight's challenge but are not contested. Instead, Knight argues that the Detective improperly prolonged the stop after issuing the warning.

¶4        After stopping the Camry, the Detective approached the passenger side and spoke to the driver through the passenger window. The Detective told the driver he would be issuing a warning for following at an unsafe distance. When the driver provided his Wyoming driver's license, the driver's hands were shaking. The Detective also asked for the rental car

paperwork, but neither the driver nor Knight were initially able to locate it. At the Detective's request, in the 100-degree heat, the driver got out of the Camry and followed him to the front of the patrol car. The driver then stood next to the patrol car while the Detective prepared the written warning.

¶5        Knight remained in the passenger seat of the car. Knight then found the rental car paperwork in the glove box and held it out of the passenger's side window for the Detective to retrieve. When handing the paperwork to the Detective, Knight's hands were shaking. The Detective then went back to his patrol car, where the driver was standing, to complete the warning. The rental agreement was between the rental car company and a third person; neither the driver nor Knight were listed on the rental agreement, which the Detective said was very unusual.

¶6        For the next several minutes, while running a check on the driver and filling in the warning, the Detective asked the driver questions. The Detective saw the driver breathing rapidly and that he was leaning against the hood of the patrol car to keep his balance. The driver explained that they were returning to Cheyenne, Wyoming after driving from Wyoming to Phoenix to visit his mother who was in the hospital. The two drove 15 hours to Phoenix and stayed less than 24 hours. The Detective testified that spending such a short time at a destination after such a long drive was uncommon.

¶7        After questioning the driver, the Detective went back to the Camry to check the Vehicle Identification Number (VIN). The Detective then handed Knight a small piece of white paper, the nature of which is unclear, but it was not the warning. Knight argues that was when the traffic stop ended, and the remaining interaction was no longer consensual. The superior court, however, found the traffic stop ended a few minutes after the Detective handed Knight the white paper, which was about 10 minutes after the stop began.

¶8        The Detective then spoke with Knight, asking about the purpose of the trip and Knight provided information consistent with what the driver had said. The Detective testified Knight appeared nervous throughout the entire interaction.

¶9        By then, a second officer had arrived, and as shown on dash camera footage, the second officer began speaking with the driver near the patrol car. The second officer asked the driver more questions about the trip and returned the driver's license and rental agreement and the driver then

signed the warning. The superior court found the purpose of the stop concluded at that time, about 10 minutes after the stop began.

¶10        The driver, however, did not immediately return to the Camry after receiving the warning. For the next few minutes, the second officer asked the driver more questions about the trip and the driver voluntarily answered those questions. The second officer asked the driver whether there were any drugs in the car, and the driver said no.

¶11        When he was asked about drugs, the driver got extremely nervous, could not stand still, and crinkled the warning in his hands. The officers asked to search the car, and the driver responded "Why?" Although no consent was given, at that point, the Detective told the driver that he would use his drug dog to sniff around the car. The Detective asked Knight to get out of the Camry, and he complied. The dog then alerted to the presence of drugs in the car and officers found methamphetamine in the trunk.

¶12        The State charged Knight with sale or transportation of drugs (methamphetamine), a Class 2 felony, and possession of drug paraphernalia, a Class 6 felony. Knight moved to suppress all evidence obtained during the traffic stop, arguing the Detective lacked a reasonable suspicion necessary to prolong the traffic stop after issuing the warning. After an evidentiary hearing, the superior court denied the motion, finding the totality of the circumstances indicated sufficient reasonable suspicion to justify extending the traffic stop. Knight unsuccessfully moved for reconsideration.

¶13        After a failed conditional plea, Knight submitted the matter to the court as finder of fact following a proper waiver of trial rights. After considering the record, the court found Knight guilty as charged. Given his prior criminal history, the court sentenced Knight to concurrent prison terms of 10.5 years for Count 1 and 2.25 years for Count 2, properly awarding him 340 days of presentence incarceration credit. This court has jurisdiction over Knight's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A) (2024).[1]

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

## DISCUSSION

¶14        "In reviewing an order involving a motion to suppress, we review the facts in the light most favorable to sustaining the order, and will not disturb the trial court's ruling absent 'clear and manifest error.'" *State v. Dean*, 206 Ariz. 158, 161 ¶ 9 (2003) (quoting *State v. Hyde*, 186 Ariz. 252, 265 (1996)). This court reviews a ruling on a motion to suppress for an abuse of discretion, deferring to the "court's factual findings if reasonably supported by the evidence," but reviewing the court's "ultimate legal determination de novo." *State v. Adair*, 241 Ariz. 58, 60 ¶ 9 (2019). This court will not "reweigh the evidence or reassess credibility issues on appeal." *Williams v. King*, 248 Ariz. 311, 317 ¶ 26 (App. 2020) (citation omitted).

¶15        Knight does not challenge the legality of the traffic stop. In addition, the State concedes Knight has standing to challenge the lawfulness of the extension of the traffic stop. The dispositive issue is whether the Detective had reasonable suspicion to extend the traffic stop after providing the driver the written warning.

¶16        Law enforcement may stop a car and detain its occupants pending inquiry into a traffic violation. *See Arizona v. Johnson*, 555 U.S. 323, 327 (2009). Such a traffic stop allows officers to do things like check driver's licenses, determine whether there are any outstanding warrants for occupants in the car, and inspect and confirm proof of insurance and registration. *See Rodriguez v. United States*, 575 U.S. 348, 349 (2015). An officer's authority for a traffic stop ends when tasks related to the traffic infraction are, or reasonably should have been, completed. *See Rodriguez*, 575 U.S. at 354 (citation omitted). Once an officer has concluded the purpose of a traffic stop, or reasonably should have, the officer must allow the vehicle's occupants to leave unless the continuing encounter is consensual, or the officer has developed reasonable suspicion of criminal activity. *See State v. Teagle*, 217 Ariz. 17, 23 ¶ 22 (App. 2007) (citation omitted).

¶17        Reasonable suspicion exists when the State can provide proof of a particularized and objective basis for suspecting criminal activity by the person stopped. *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citation omitted). The inquiry is based on the totality of the circumstances, "considering such objective factors as the suspect's conduct and appearance, location, and surrounding circumstances, such as time of day, and taking into account the officer's relevant experience, training, and knowledge." *State v. Fornof*, 218 Ariz. 74, 76 ¶ 6 (App. 2008) (citing cases). While reasonable suspicion must be more than an inchoate hunch, it only requires specific and articulable facts that, taken together with rational

inferences from those facts, reasonably justify the officer's actions. *Teagle*, 217 Ariz. at 23 ¶ 25 (citation omitted); *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

¶18 Based on the record, Knight has not shown the superior court erred in denying his motion to suppress. The court's determination, based on weighing and assessing witness credibility in light of the evidence provided, is supported by the record.

¶19 Knight's two main arguments on appeal rest on *State v. Sweeney*, 224 Ariz. 107 (App. 2010), and *State v. Magner*, 191 Ariz. 392 (App. 1998). First, Knight argues *Sweeney* found reasonable suspicion was lacking based on many of the same factors presented here, also arguing the superior court's reliance on drug courier profile factors in this case was erroneous. However, *Sweeney* emphasized the importance of considering the totality of the circumstances when addressing reasonable suspicion, 224 Ariz. at 114 ¶ 28, not the checklist approach Knight advocates. *Sweeney* also listed factors, not elements, in addressing reasonable suspicion. Moreover, the superior court here relied on more than just the *Sweeney* factors attributed to drug courier profiles.

¶20 Second, citing *Magner*, Knight asserts nervousness alone is not sufficient to prolong a traffic stop. True, *Magner* stated that "courts must be wary of granting much weight to a law enforcement officer's subjective observation that a defendant was nervous." 191 Ariz. at 397 ¶ 14. But the State correctly counters that the superior court did not rely on nervousness alone. Instead, in denying Knight's motion to suppress, the court relied on various factors the factual record shows were indicia of reasonable suspicion of criminal activity, including: (1) the straight, upright body positions of the driver and Knight and their unchanged body positions when approached by the Detective driving a marked patrol car; (2) the persistent, nervous behavior by the driver and Knight; (3) the short duration of the stop; (4) the short duration of their stay in Phoenix; and (5) the rental car with Colorado plates that was rented to a third party, and neither the driver nor Knight were listed on the rental agreement or listed as authorized drivers. *See United States v. Pettit*, 785 F.32d 1374, 1382 (10th Cir. 2015) ("In the trooper's professional experience, and in our case law, driving a vehicle registered to an absent third party can indicate drug trafficking.") (citations omitted).

¶21 The superior court, viewing this as a close case, appears to have been persuaded by the issues presented by the third-party rental agreement. That fact, the court noted, gave it "great pause in weighing evidence" and, ultimately, "tips the scale" in showing that the Detective

had a reasonable suspicion of criminal activity in extending the traffic stop. The court emphasized that "[w]ithout the rental agreement, the Court would likely be in agreement with Defendant's counsel on his suppression argument considering" *Sweeney*.

**¶22** When determining whether an officer had reasonable suspicion, a court must collectively examine the evidence presented in the context of all applicable legal factors. *Teagle*, 217 Ariz. at 24 ¶ 25 (citation omitted). Considering the third-party rental agreement, the other factors discussed in *Sweeney*, and the factors beyond mere nervousness, including a driver and a passenger in a rental car leased by an absent third party, the superior court correctly found the Detective had reasonable suspicion of criminal activity to justify extending the traffic stop after the issuance of the warning.

**¶23** In substance, Knight argues the evidence should have been weighed differently. But this court does not reweigh the evidence considered and assessed by the superior court. *See State v. Duncan*, 548 P.3d 1128, 1136 ¶ 10 (Ariz. App. 2024) (citation omitted). On this record, Knight has shown no error in the denial of his motion to suppress or his motion to reconsider.

## CONCLUSION

**¶24** Knight's convictions and resulting prison sentences are affirmed.

