4 P.3d 383

**The STATE of Arizona, Appellee,**

v.

**Paul Matthew O'MEARA, Appellant.**

**No. 2 CA–CR 98–0468.**

Court of Appeals of Arizona,
Division 2, Department A.

June 15, 1999.

Redesignated as Opinion and
Publication Ordered June 15, 1999.

Review Granted in Part Feb. 8, 2000.

---

Janet Napolitano, Arizona Attorney General By Paul J. McMurdie and Joseph L. Parkhurst, Tucson, for Appellee.

William G. Walker, P.C. By William G. Walker, Tucson, for Appellant.

OPINION

DRUKE, Chief Judge.

¶ 1 Appellant Paul O'Meara challenges the trial court's denial of his motion to suppress 349 pounds of marijuana found in the trunk of his vehicle. Appellant does not contest the initial stop of the vehicle for two minor traffic violations, but contends his rights under the Fourth Amendment to the United States Constitution were violated because reasonable suspicion did not exist for the investigative detention after the stop and because the detention of forty-five to fifty minutes was unreasonable. Based on the evidence presented at the suppression hearing, we find no Fourth Amendment violation and therefore affirm appellant's convictions and concurrent four-year prison sentences for unlawful transportation of marijuana for sale and unlawful possession of marijuana for sale.

¶ 2 We review de novo whether the totality of circumstances warranted a police officer's investigative detention, *State v. Magner*, 191 Ariz. 392, 956 P.2d 519 (App. 1998), and whether its duration was unreasonable. *State v. Spreitz*, 190 Ariz. 129, 945 P.2d 1260 (1997). We defer, however, to the trial court's factual findings on credibility and the reasonableness of the inferences drawn by the officer. *State v. Gonzalez–Gutierrez*, 187 Ariz. 116, 927 P.2d 776 (1996).

¶ 3 In midafternoon of November 5, 1997, Pima County Sheriff's Detective Jesus Lopez observed four men standing outside a local department store. After a few minutes, they entered a maroon vehicle parked in the store's parking lot. Moments later, one of the men got out of the vehicle and walked to the front of the store, where he met appel-

lant. They spoke briefly and then began walking back towards the maroon vehicle. As they approached, the three men got out of the vehicle, entered a gray vehicle parked nearby, and drove off.

¶4 Appellant and the other man entered the maroon vehicle and left the parking lot. Lopez followed in his vehicle but lost them in traffic after they made two U-turns. Lopez believed he had seen the gray vehicle on a prior occasion at a house on Holladay Street, and he drove by the house. There he saw the gray vehicle, occupied by the same three men, backing out of the driveway. Lopez began following the gray vehicle and, as he did so, the maroon vehicle appeared and also began following it. The gray and maroon vehicles then stopped in a store parking lot. The three men exited the gray vehicle, entered the maroon vehicle, and drove away. Appellant entered the gray vehicle and also drove away, with Lopez following.

¶5 As Lopez followed appellant, he radioed for a patrol officer to follow appellant and stop him if he committed any traffic violations. The officer eventually stopped appellant for two minor traffic violations and issued him warnings. Lopez asked appellant for consent to search the trunk of his vehicle, but he refused. Lopez sniffed the trunk area of the vehicle and, upon smelling a strong odor of fabric softener, asked appellant if there were any drugs in the vehicle; appellant said he did not believe so. Lopez then called for a canine deputy, who arrived with his drug detection dog forty-five to fifty minutes later. After the dog gave a positive alert to the trunk area, Lopez obtained a telephonic search warrant, opened the trunk, and found 349 pounds of marijuana inside.

■ ¶6 Appellant first contends his continued detention after the traffic stop violated his rights under the Fourth Amendment, relying on *Magner*. There, as here, the defendant was stopped for a traffic violation, issued a warning, refused a request to search his vehicle, and was detained about forty-five minutes for a drug detection dog to come to the scene. The trial court found that the officer had reasonable suspicion to detain the defendant based on the following observations: the defendant generally refused eye

contact and was unusually upset at being stopped, signifying to the officer that the defendant was nervous; the defendant had his car registration on the front passenger seat, suggesting he might have a gun in the glove box; his car was dirty, a factor the officer believed was consistent with "people who are involved with criminal activity"; the defendant had a black overnight bag on the back seat, indicating he wanted to keep the trunk contents hidden; he had on a tie, though he was wearing jeans and sneakers, implying he was a businessman and thus lessening his chances of being stopped; and he was traveling to Arkansas from Tucson, a city the officer "knew to be a source for illegal drugs." *Id.* at 396, 956 P.2d at 523.

¶7 On appeal, the court's majority agreed with the trial court that the inferences of criminal activity the officer drew from his observations were rational, but concluded from their own analysis of those observations "that there were other equally strong or stronger rational inferences of innocent behavior that could have been drawn from each of the observations." *Id.* at 400, 956 P.2d at 527. The majority added that the inferences of criminal activity "were not diminished or eliminated by inquiries that could easily have been made." *Id.*

¶8 Here, appellant urged the trial court to follow *Magner*, claiming that the inferences of criminal activity Lopez drew from his observations and the odor of fabric softener were also consistent with innocent behavior and that he should have further questioned appellant before detaining him any longer. Appellant argued that, even though the switching of cars could be suspicious, people switch cars for any number of reasons and that the odor of fabric softener could be explained by a trunk full of laundry, groceries, or cleaning supplies. The trial court rejected these arguments, finding:

The switching of cars in the instant case [was] ... suspicious because it involved the switching of cars on two different occasions at two different locations. Also, this must be considered with the testimony of [Lopez] that he smelled a strong odor of fabric softener emanating from the trunk area.... Considering the totality of these

factors, the testimony of [Lopez] regarding his training and experience ..., [he] did have reasonable suspicion that supported the further detention of [appellant] in order to secure the drug dog.

We agree with the trial court. The multiple car switching and odor of fabric softener, coupled with Lopez's experience, gave him reasonable suspicion that appellant was engaged in criminal activity. In making this determination, we give due weight, "not to [the officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968).

¶ 9 Lopez testified that he had four years' experience in narcotics investigations as part of a special unit that targeted mid-to high-level narcotic traffickers, that he had "seized large amounts of narcotics and ... arrested numerous people in regards to the investigations," and that as a result, he was "familiar with the way most of the narcotic transactions are conducted here in the Tucson area." Based on this experience, he stated:

> [I]t is common for narcotic traffickers to meet in public parking lots. It is common for the buyer to give his vehicle to the seller, at which time the seller takes control of the vehicle and takes it to a different location so the vehicle could be loaded with narcotics or with marijuana.
>
> One of the reasons narcotic traffickers do this is because the seller ... is afraid if he takes the buyer to the ... residence where they store the marijuana, ... the buyer may rip him off at a later point in time, or if the buyer is stopped later on and arrested, ... the buyer may ... give up the location where the marijuana was stored at.

He also said, "It's been my experience that narcotic traffickers use fabric softener to mask the odor of marijuana," as well as "motor oil, talcum powder, you know, stuff that has an odor." When we consider the totality of circumstances, as we must, *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), rather than such ostensibly benign individual factors as the

multiple car switching or the odor of fabric softener, we conclude that Lopez justifiably detained appellant for further investigation. We agree with the following observations by the dissent in Magner:

> When addressed individually, almost any factor short of a 10 pound bale of marijuana on the front seat of the vehicle may have an innocent explanation. That, precisely, is why the Supreme Court has consistently held that innocent behavior will frequently provide the basis for an officer's reasonable suspicion, and that the relevant inquiry is not whether the particular behavior is innocent or guilty, but rather is the degree of suspicion that attaches to the particular types of non-criminal acts.

*Magner*, 191 Ariz. at 401–02, 956 P.2d at 528–29 (Voss, J., dissenting).

¶ 10 Moreover, Lopez utilized his specialized training and experience in narcotics investigation to draw the inferences he did from the multiple car switching and the odor coming from appellant's trunk. In contrast, the officer in *Magner*, as the majority noted, used his

> specialized knowledge with regard to only one factor, that dealing with the "dirty" car. ... [The officer] did not testify that any of his specialized drug interdiction training taught him that exhibiting nervousness of some particular degree, keeping a registration form on the seat, wearing a particular form of attire, or placing an overnight bag on the back seat were, collectively or individually, signs of a drug courier.

*Id.* at 401, 956 P.2d at 528.

¶ 11 Appellant nonetheless argues that Lopez should have attempted to dispel or allay his suspicions before detaining appellant by asking him further questions. In support, appellant relies on the following statement by the majority in *Magner*: "Implicit in our analysis is the conclusion that [the officer] would have been authorized to continue defendant's detention for a brief period to ask further questions about the circumstances [the officer] deemed suspicious." *Id.* at 400, 956 P.2d at 527. The only authority the majority cited for this

proposition is *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). There, the Supreme Court disapproved of random vehicle stops by immigration officers near but not at the border and held, consistent with *Terry,* that "when [the] officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion." 422 U.S. at 881, 95 S.Ct. at 2580, 45 L.Ed.2d at 617. But this holding does not, as the majority in *Magner* implies, mandate questioning by the officer during an investigative stop; rather, it simply permits or authorizes questioning. We believe the totality of circumstances, rather than a per se rule that appellant seems to advocate, should dictate whether and to what extent the officer should question the person stopped in order to render further detention reasonable. For example, in the hypothetical situation described by the dissent in *Magner,* questioning would be unnecessary after an officer sees a bale of marijuana on the front seat of a stopped vehicle.

¶ 12 By the same token, further questioning was unnecessary here once Lopez smelled the odor of fabric softener coming from appellant's trunk. Lopez had observed appellant's driving and behavior before the stop and, based on his experience, believed appellant was involved in narcotics trafficking. After the stop and brief questioning of appellant, Lopez smelled the trunk of appellant's vehicle and detected the odor of fabric softener, which he knew from his experience is often used to mask the smell of marijuana. Under these circumstances, Lopez had reasonable or founded suspicion that appellant had marijuana in his trunk and thus did not violate his Fourth Amendment rights by ceasing further questioning and detaining him until a drug detection dog arrived.

■ ¶ 13 Finally, appellant argues that the duration of his detention while awaiting the dog's arrival was unreasonable, citing *State v. Richcreek,* 187 Ariz. 501, 930 P.2d 1304 (1997), and *State v. Jarzab,* 123 Ariz. 308, 599 P.2d 761 (1979). These cases do not help appellant; they only address whether reasonable suspicion supported the defendant's detention, not whether its duration was unreasonable. The duration issue was, however, addressed in *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). The Supreme Court first rejected a "rigid time limitation on *Terry* stops," *id.* at 685, 105 S.Ct. at 1575, 84 L.Ed.2d at 615, and said courts should, instead, examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly" during the detention. *Id.* at 686, 105 S.Ct. at 1575, 84 L.Ed.2d at 615–16. The Court then concluded from its examination of the facts that the defendants' detention for twenty minutes did "not involve any delay unnecessary to the [officers'] legitimate investigation," observing that the defendants had "presented no evidence that the officers were dilatory in their investigation." *Id.* at 687, 105 S.Ct. at 1576, 84 L.Ed.2d at 616.

¶ 14 We reach the same conclusion here. Lopez promptly called for a canine officer after smelling the odor of fabric softener coming from appellant's trunk. When Lopez was asked during the suppression hearing whether he knew how long it would take for the officer to arrive, Lopez responded: "Basically we request that a canine officer respond and basically it's driving time from their residence." Because Lopez used a means of investigation that would quickly confirm or dispel his suspicions, *Sharpe,* and because appellant presented no evidence that the canine officer was dilatory in responding, *id.,* we conclude that the duration of appellant's detention until the dog arrived was reasonable under the circumstances. See *Spreitz,* 190 Ariz. at 143, 945 P.2d at 1274 (defendant's detention of forty-five minutes "fully justified, given the time to travel in search of the [alleged] 'fight scene,' to return [to the site of the initial stop], and to photograph defendant"); *United States v. Davies,* 768 F.2d 893, 902 (7th Cir.1985) (After initial stop and questioning, "it was reasonable for the [F.B.I.] agents to detain [the defendant] ... for further questioning and advice from their superiors.").

¶ 15 We therefore affirm appellant's convictions and sentences.

CONCURRING: JOHN PELANDER, Presiding Judge, and M. JAN FLÓREZ, Judge.