9 P.3d 325

**STATE of Arizona, Appellee.**

v.

**Paul Matthew O'MEARA, Appellant.**

**No. CR–99–0226–PR.**

Supreme Court of Arizona,
En Banc.

Aug. 31, 2000.

---

Janet A. Napolitano, Attorney General By Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Joseph L. Parkhurst, Assistant Attorney General, Phoenix, Attorneys for the State of Arizona.

William G. Walker, Tucson, Attorney for Paul Matthew O'Meara.

## O P I N I O N

MARTONE, Justice.

¶ 1 We granted review to resolve a conflict between Division One and Division Two of the Court of Appeals on the approach taken to evaluate the "totality of the circumstances" surrounding reasonable suspicion to support a detention.

### I.

¶ 2 Detective Jesus Lopez saw four men loitering in front of a K–Mart in Tucson. They then got into a maroon car and sat for about fifteen minutes. One of them got out of the car, walked towards the front of the K–Mart, and talked to O'Meara for a few minutes. The other three men got out of the maroon car and into a gray car parked nearby. O'Meara and the man he spoke with got into the maroon car and drove away. The other three men drove away in the gray car. Detective Lopez recognized the gray car as one he had seen a few days earlier at 3001 W. Holladay Street. He then followed the maroon car until it made two successive U-turns.

¶ 3 Having lost sight of the maroon car, Lopez went to 3001 W. Holladay Street to see if he could find the gray car. As he approached, the gray car was backing out. The three men from the K–Mart were inside. As Lopez followed the gray car, the maroon car passed by, and made yet another U-turn. The maroon and gray cars stopped at a Safeway parking lot. Lopez saw O'Meara get out of the maroon car and get into the gray car. The three men in the gray car got back into the maroon car and left the parking lot. Lopez then followed O'Meara in the gray car. Lopez radioed a patrol officer for help and instructed him to stop the gray car if it violated any traffic laws.

¶ 4 The patrol officer stopped O'Meara for failing to signal a lane change and for speeding. Lopez approached and asked for consent to search the car. O'Meara refused. Lopez then walked back to the trunk, which smelled strongly of fabric softener. He asked O'Meara if there were drugs in the car and O'Meara said he did not believe so. Lopez then called for a drug detection dog which alerted on the trunk. After obtaining a telephonic search warrant, Lopez opened the trunk and found 349 pounds of marijuana.

¶ 5 The trial court denied O'Meara's motion to suppress. He was convicted of unlawful transportation and possession of marijuana for sale. Division Two of the Court of Appeals affirmed. *State v. O'Meara*, 197 Ariz. 328, 4 P.3d 383 (App.1999). It held that the multiple car switching, the odor of fabric softener, and Lopez' experience gave him reasonable suspicion that O'Meara was engaged in criminal conduct. This was sufficient to detain O'Meara after the lawful traffic stop. It considered the totality of the circumstances, and criticized the approach taken by Division One in *State v. Magner*, 191 Ariz. 392, 956 P.2d 519 (App.1998), which focused on each individual factor. Division Two agreed with the dissenting view in *Magner*, 191 Ariz. at 401–02, 956 P.2d at 528–29 (Voss, J., dissenting), which eschewed an approach that would address each factor individually.

¶ 6 We granted O'Meara's petition for review to resolve this apparent conflict, and in so doing, to decide whether the evidence here amounted to reasonable suspicion. *See* Rule 31.19(c)(3), Ariz. R.Crim. P.

### II.

■ ¶ 7 The validity of the stop is not in question. O'Meara claims that his continued detention, after the stop, was not based on reasonable suspicion. In deciding whether the police have a particularized and objective basis for suspecting that a person is engaged in criminal activity, we look at the "whole picture," or the "totality of the circumstances." *United States v. Cortez*, 449 U.S.

411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

¶ 8 Relying upon *Magner*, O'Meara argues that both the odor of fabric softener and the switching of the cars could have innocent explanations. *Magner* acknowledged the totality of the circumstances approach, but said that in looking at the totality, it had to examine each factor individually. *Magner*, 191 Ariz. at 396–97, 956 P.2d at 523–24. It discussed Magner's nervousness, the vehicle registration, his attire, Tucson as a "source city" for drugs, a dirty car, and finally, an overnight bag on the back seat. Instead of evaluating these factors as a single picture, it found that there were other equally strong inferences of innocent behavior that could be drawn from each of the observations. *Id.* at 400, 956 P.2d at 527.

¶ 9 While we certainly agree with the result in *Magner*, we do not approve of the approach taken. As the dissent in *Magner* noted, "[w]hen addressed individually, almost any factor short of a 10 pound bale of marijuana on the front seat of the vehicle may have an innocent explanation." *Id.* at 401, 956 P.2d at 528 (Voss, J., dissenting). The court should have looked at the whole picture to evaluate the totality of the circumstances. It then could have concluded that, collectively, these factors simply failed to show reasonable suspicion of criminal activity.

¶ 10 By definition, reasonable suspicion is something short of probable cause. As the Supreme Court recently noted in *Illinois v. Wardlow*, 528 U.S. 119, ——, 120 S.Ct. 673, 677, 145 L.Ed.2d 570 (2000), "[e]ven in *Terry*, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation." One cannot parse out each individual factor, categorize it as potentially innocent, and reject it. Instead, one must look at all of the factors, (all of which would have a potentially innocent explanation, or else there would be probable cause), and examine them collectively. There is a gestalt to the totality of the circumstances test under *Cortez.*

¶ 11 Applying that test in this case, we agree with Division Two of the Court of Appeals here. Lopez explained that multiple

car switching is common among narcotic traffickers. The buyer gives his car to the seller so that the seller can take it to the "stash house" for loading. Tr. July 6, 1998 at 10. They do this to avoid future theft by the buyer and to prevent the buyer from giving the location of the "stash house" to the police if stopped. Lopez also explained that fabric softener is routinely used to cover up the odor of drugs. Thus, looking at the whole picture in this case, the car switching, the U-turns, and the fabric softener, there is no doubt that Lopez had reasonable suspicion to detain O'Meara while they were waiting for the drug detection dog. The trial judge did not err in denying O'Meara's motion to suppress.

### III.

¶ 12 We approve of the opinion of the court of appeals as to the issue upon which review was granted. We disapprove that part of *Magner* insofar as it focuses on potential innocent explanations for each individual factor and fails to look at the totality of the circumstances in evaluating reasonable suspicion. The judgment of the trial court is affirmed.

CONCURRING: CHARLES E. JONES, Vice Chief Justice, and RUTH V. McGREGOR, Justice.

FELDMAN, J., specially concurring.

¶ 13 I agree with the result the court reaches but write separately because I disagree with the court's criticism and eventual disapproval of the analysis adopted and applied in *State v. Magner*, 191 Ariz. 392, 956 P.2d 519 (App.1998).

¶ 14 As the majority opinion acknowledges, the validity of the stop was not raised and is not in question. *Ante* at ¶ 7. Nor have we granted review of any question pertaining to the length of the detention after the stop. There is a difference, of course, between the reasonable suspicion that will justify a brief investigative stop and the circumstances necessary to justify continued detention. *See* 2 WAYNE R. LaFAVE, JEROLD H. ISRAEL & NANCY J. KING, CRIMINAL PROCEDURE § 3.8(B), 231–32 (2d ed.1999); *Florida v. Royer*, 460

undefinedundefined

U.S. 491, 502, 103 S.Ct. 1319, 1326–27, 75 L.Ed.2d 229 (1983). The sole question in the present case is whether the circumstances justified O'Meara's continued detention. *Ante* at ¶ 7. The test for this, as the majority acknowledges, is to look at the "whole picture" or "totality of the circumstances." *Id.*

¶ 15 I also agree that the totality of the circumstances here created sufficient suspicion of criminal conduct that detention for a reasonable length of time was permissible under both the fourth amendment and article II, section 8 of the Arizona Constitution. Given the officer's knowledge of methods employed in the drug trade, the trade-off of cars, drivers, and passengers on two separate occasions at two different market parking lots raised at least a reasonable suspicion of criminal activity. After the initial stop, this suspicion was strengthened by the smell of fabric softener emanating from the trunk of the car. While there are possibly innocent explanations for each of these facts, the totality of the picture they present makes it impossible to conclude that the trial judge abused his discretion in denying the motion to suppress.

¶ 16 My disagreement is with the majority's disapproval of *Magner*. What else are we to do but first look at the facts and then look at the overall picture they paint? The majority recommends that we look at the totality and ignore the individual circumstances. Indeed, it says that there "is a gestalt to the totality of the circumstances test." The definition of "gestalt" is a "structure ... so integrated as to constitute a functional unit with properties not derivable from its parts." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 952 (1971).

¶ 17 But the final picture presented to the trial judge and to this court is different from, for example, an impressionist painting. When we view the waterlilies in Monet's garden at Giverny, the artist's talent enables us to first see only the finished product; we cannot see the individual strokes that make up the whole without close examination. In contrast, when determining whether the totality of the circumstances creates reasonable suspicion, we cannot evaluate the totality without first ascertaining and examining the facts that create the final picture.

¶ 18 This, indeed, was all the court did in *Magner*. In its analysis it first considered "The Individual Factors." *Magner*, 191 Ariz. at 397–400, 956 P.2d at 524–27. The court then looked at the "Totality of the Circumstances." *Id.* at 400, 956 P.2d at 527. This, we are now told by the majority, is just what should not be done. *Ante* at ¶ 9 (disapproving of the *Magner* approach). Instead, we look "at the whole picture to evaluate the totality of the circumstances." But we cannot look at the whole picture until we have first painted it.

¶ 19 If the court means by its disapproval of *Magner* to invite affirmance of investigative stops and detention, disregarding any consideration of the innocent probabilities of the individual facts relied on by the police officer, then we should all fear the "gestalt" that will be created.

¶ 20 But of course the majority has no intention of approving such methods. Hence, my puzzlement is with the disapproval of *Magner*. As the majority in *Magner* stated, its "analysis clearly [showed that it had] performed a *de novo* review of the same circumstances as were before the trial court, and *reviewed them as a whole*. [They] simply disagree[d] ... that these circumstances, *taken together*, comprise[d] reasonable suspicion." *Id.* at 401, 956 P.2d at 528 (emphasis added). The majority disapproves of this method but fails to tell us how else to conduct a review. How can we look at the result without first looking at the facts?

¶ 21 Unable to understand the majority's approach, I simply concur in the result.

CONCURRING: THOMAS A. ZLAKET, Chief Justice.