NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

LIBRADO LARA GALAVIZ, *Appellant*.

No. 1 CA-CR 14-0310
FILED 8-11-2015

Appeal from the Superior Court in Yuma County
No. S1400CR8814687
The Honorable Maria Elena Cruz, Judge
The Honorable H. Stewart Bradshaw, Judge *Retired*

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra
*Counsel for Appellee*

Yuma County Public Defender's Office, Yuma
By Edward F. McGee
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Margaret H. Downie joined.

---

**W I N T H R O P**, Judge:

**¶1**        Librado Lara Galaviz ("Appellant")[1] appeals his conviction and sentence for transportation of marijuana for sale in a quantity of eight pounds or more.  He argues (1) the trial court erred in denying his motion to suppress because the border patrol agent who arrested him did not have reasonable suspicion for the initial stop, and (2) he should be awarded additional presentence incarceration credit.  For the following reasons, we affirm Appellant's conviction and modify the sentencing minute entry to reflect fifteen additional days of presentence incarceration credit.

**FACTS AND PROCEDURAL HISTORY[2]**

**¶2**        On April 12, 1988, at approximately 8:30 p.m., a border patrol agent stopped a van on Highway 95 north of Yuma, a well-documented route for smuggling "loads of [illegal] aliens and drugs" to Phoenix and Los Angeles.  As the agent approached the driver (later identified as Appellant), he smelled a strong odor of air freshener emanating from the van.  The agent questioned Appellant briefly and, after noting inconsistencies in Appellant's answers, asked for permission to look in the back of the van.  Appellant consented, and the agent found approximately 120 pounds of marijuana in 115 cellophane-wrapped packages underneath rumpled carpet in the back of the van.

**¶3**        Appellant was arrested and charged by indictment with one count of transportation of marijuana for sale, involving an amount of

---

[1]        The record provides several variations of Appellant's name, including:  Librado Lara Galaviz, Librado Lara-Galaviz, Librado Lara Galviz, and Librado Galaviz Lara.

[2]        We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant.  *See State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994).

marijuana at the time of seizure of more than eight pounds, a class two felony. *See* Ariz. Rev. Stat. ("A.R.S.") § 13-3405.[3]

¶4            Before trial, Appellant filed a motion to suppress any statements he made to the border patrol agent and other law enforcement officers, as well as any and all evidence relating to the search of the van. After briefing and an evidentiary hearing, the trial court denied the motion.[4]

¶5            Appellant posted bond and was released pending trial; however, despite being warned that trial could proceed in his absence, he did not appear at trial. Trial proceeded *in absentia*, and the jury found Appellant guilty as charged.

¶6            Appellant remained at large from 1988 until his arrest at the San Luis Port of Entry from Mexico on January 1, 2014. On April 30, 2014, he was sentenced to a minimum term of 5.25 years' imprisonment in the Arizona Department of Corrections and credited for 119 days of presentence incarceration.

¶7            Appellant filed a timely notice of appeal, and we have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and A.R.S. §§ 12–120.21(A)(1), 13–4031, and 13–4033(A).[5]

---

[3]    We cite the current version of the applicable statutes unless changes material to our decision have occurred since the date of the offense.

[4]    Appellant filed a petition for special action in this court challenging the order denying his motion to suppress. This court declined to accept jurisdiction of the petition.

[5]    No transcript of Appellant's 1988 jury trial was ever produced, and pursuant to Arizona Code of Judicial Administration Records Retention Section 2(a)(2), the court reporter's original notes were destroyed. Therefore, no transcript of the jury trial could be produced for this appeal. This court temporarily revested jurisdiction in the trial court for the purpose of permitting that court and the parties to reconstruct and/or submit a statement of the evidence and record in this matter. On November 24, 2014, the parties submitted an "Agreed Statement as to the Record on Appeal." Included as an exhibit to that document is a complete transcript of the suppression hearing conducted June 17, 1988. The record on appeal contains all of the documents relevant to the suppression hearing.

**ANALYSIS**

     *I.     Reasonable Suspicion*

**¶8**     Appellant argues the trial court erred in denying his motion to suppress because the arresting border patrol agent did not have reasonable suspicion to stop his van. Appellant does not challenge the propriety of the events subsequent to the initial stop, including his consent to the van's search, except to argue those events were tainted by a lack of reasonable suspicion for the initial stop.

**¶9**     In general, we review a ruling on a motion to suppress evidence for clear and manifest error. *State v. Walker*, 215 Ariz. 91, 94, ¶ 16, 158 P.3d 220, 223 (App. 2007) (citation omitted). In reviewing the denial of a motion to suppress, we consider the evidence presented at the suppression hearing in the light most favorable to upholding the trial court's ruling. *Id.* (citations omitted). We accord great deference to the trial court's credibility determinations because that court is in the best position to observe the demeanor of the testifying witnesses. *See State v. Olquin*, 216 Ariz. 250, 252, ¶ 10, 165 P.3d 228, 230 (App. 2007). We review *de novo*, however, the ultimate question whether reasonable suspicion existed for the stop. *See State v. Blackmore*, 186 Ariz. 630, 632, 925 P.2d 1347, 1349 (1996).

**¶10**     When a police officer has a reasonable, articulable suspicion that criminal activity is afoot, the officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "While 'reasonable suspicion' is a less demanding standard than probable cause, and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Although a mere inchoate hunch or unparticularized suspicion is insufficient, the Fourth Amendment requires only that police officers have a particularized and objective basis for suspecting illegal wrongdoing based on their experience and specialized training and the cumulative information available to them. *State v. Teagle*, 217 Ariz. 17, 23-24, ¶¶ 25-26, 170 P.3d 266, 272-73 (App. 2007) (citations omitted).

**¶11**     On appeal, we consider the "whole picture" or the "totality of the circumstances" in deciding whether a police officer had a particularized and objective basis for suspecting a person was engaged in criminal activity. *State v. O'Meara*, 198 Ariz. 294, 295-96, ¶ 7, 9 P.3d 325, 326-27 (2000)

(citation omitted). Rather than parsing out each individual factor, categorizing it as potentially innocent, and rejecting it, we "look at all of the factors, (all of which would have a potentially innocent explanation, or else there would be probable cause), and examine them collectively." *Id*. at 296, ¶ 10, 9 P.3d at 327. In determining whether reasonable suspicion exists to stop a vehicle in the border area, we may consider any number of factors, including characteristics of the area, the location and distance from the border, the time of day, ordinary traffic patterns, the officer's previous experience, the driver's behavior, and attributes of the vehicle itself. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975) (citations omitted); *State v. Fornof*, 218 Ariz. 74, 76, ¶ 6, 179 P.3d 954, 956 (App. 2008).

**¶12** In his motion to suppress, Appellant argued (1) his post-stop statements should be suppressed because he was not given the pre-interrogation warnings required under *Miranda*,[6] and (2) all evidence obtained from the search of the van should be suppressed because the border patrol agent did not obtain a search warrant and lacked the "authority" to search the vehicle, ostensibly because the agent was not "a regular police officer." In support of his argument that pre-interrogation *Miranda* warnings were required, Appellant maintained in part that, because he "at least fit the profile for an alien smuggler," upon approaching him after the initial stop, the border patrol agent should have "[a]t that point" warned him that he was under investigation and provided *Miranda* warnings. In effect, therefore, Appellant's argument relied at least in part on a concession that "reasonable suspicion" existed for the initial stop - in fact, so much reasonable suspicion/probable cause that the officer should have immediately provided Appellant with post-stop *Miranda* warnings.

**¶13** In responding to the motion to suppress, the State argued in part, apparently as a matter of form, that reasonable suspicion existed for the initial stop. Rather than address the issue of reasonable suspicion in his reply, however, Appellant argued the border patrol agent lacked the "authority" to stop Appellant because the stop occurred approximately fifty miles north of the Mexico border, and the agent's authority was limited to "the functional equivalent of the border." In support of his argument, Appellant maintained "the only reason [the agent] stopped [Appellant] was that he was driving a Van with mexican license plates and which supposedly fitted some profile that caused him to stop [Appellant]." He did not further develop that statement, but instead also argued the border patrol agent lacked the authority to search and arrest him for drugs because the agent did not work for the Drug Enforcement Agency ("D.E.A.").

---

6 *See Miranda v. Arizona*, 384 U.S. 436 (1966).

5

According to Appellant, "[i]if [the agent] had any suspicion, whether warranted or not, the proper procedure would be for him to have called D.E.A. Agents and allowed them to continue the search."[7] Not once in his motion to suppress or his reply did Appellant use the term "reasonable suspicion" or its functional equivalent.

¶14 To preserve an issue for appeal, a defendant must clearly raise that specific issue before the trial court. *See State v. Thomas*, 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981). If a defendant fails to raise an issue in the trial court, or as in this case effectively concedes the issue in the trial court, the matter is waived absent fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). Fundamental error is that which goes to the foundation of the case, takes away a right essential to the defense, and is of such magnitude that a defendant could not have received a fair trial. *Id*. at 568, ¶ 24, 115 P.3d at 608. To prevail under fundamental error review, Appellant must prove that the trial court erred, the error was fundamental, and the error caused him prejudice. *See id*. at 567–68, ¶¶ 19–26, 115 P.3d at 607–08; *State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342 (1991) (recognizing that before a reviewing court engages in fundamental error review, it must first conclude the trial court committed some error). A defendant bears the burden to demonstrate prejudice and may not rely on mere speculation to carry that burden. *See State v. Munninger*, 213 Ariz. 393, 397, ¶ 14, 142 P.3d 701, 705 (App. 2006).

¶15 In this case, no error occurred, much less fundamental, prejudicial error. At the suppression hearing, the arresting border patrol agent testified he completed his training as a border patrol agent more than four years earlier at the "Border Patrol Academy in Glynco, Georgia," and at the time of Appellant's arrest, had been a border patrol agent in the Yuma area for approximately three years and eight months. Before every shift, he received a briefing, and had previously been briefed concerning smuggling operations, including "criteria that has been disseminated among the patrol concerning general characteristics to look for . . . based on apprehensions we have made in the past."

¶16 Regarding the initial stop, the border patrol agent testified: On April 12, 1988, he was assigned to observe traffic in the area north of Yuma on Highway 95 near the Mexico border, because Highway 95 is a primary route to Phoenix and Los Angeles, "which is where a lot of the

---

[7] At the suppression hearing, the arresting border patrol agent testified he had received training from the D.E.A. and had a D.E.A. cross-designation.

loads [of illegal immigrants and drugs] are going." As part of his duties, he drove around to "the various places that [smugglers] will come from [including] Dome Valley Road," looking for vehicles having characteristics meeting "the profile of smugglers," including "vans" and "large older sedans, station wagons, Mexican plates, problems with registrations on plates, [vehicles that were] heavily loaded, [and vehicles where] you cannot see inside[.]" The agent explained that smugglers typically use larger vehicles because those vehicles "can carry more people and they can't be seen," and use older vehicles because "if they are caught they haven't lost a lot [of investment] in the vehicle if it's seized." He was working the evening shift, from 4:00 p.m. to midnight, which "is when the most loads are brought out through there that we catch, that we know of."

¶17        At approximately 8:30 p.m., "just after dark," the agent was three miles south of the Highway 95 border patrol checkpoint, which was closed that evening, when he observed a large, gray Dodge van drive past. The agent could not see the driver, and the van had no side windows, making it difficult to see inside, which the agent recognized as "a common profile for a smuggling type van." Because he needed his headlights to drive, the agent turned on those lights and followed the van, further observing it was an older model van with a Sonora, Mexico license plate. The agent could not see in the rear window, which was partially obstructed by a ladder and spare tire. After considering the route the van was taking (which was within fifty miles of the Mexico border), the time of night, the fact he could not see inside the van, the characteristics he had been briefed to observe, and his "own past experience," the border patrol agent activated his overhead lights and pulled the van over.

¶18        Given the totality of the individual circumstances presented, *see O'Meara*, 198 Ariz. at 295-96, ¶ 7, 9 P.3d at 326-27, we cannot say the trial court erred, much less fundamentally erred, in denying Appellant's motion to suppress. The border patrol agent provided details regarding numerous factors he observed and considered, including the specific characteristics of the area he was patrolling, its close proximity to the border, the time of day, and numerous attributes of the vehicle itself. *See Brignoni-Ponce*, 422 U.S. at 884-85; *Fornof*, 218 Ariz. at 76, ¶ 6, 179 P.3d at 956. These factors, when viewed together in the light of the border patrol agent's familiarity with the area, training, and experience, *see O'Meara*, 198 Ariz. at 296, ¶ 10, 9 P.3d at 327, support the conclusion that the agent had reasonable suspicion to perform an initial traffic stop of Appellant's van. Based on the record before us, the trial court did not commit clear and manifest error, much less fundamental, prejudicial error, in failing to find the border patrol agent lacked reasonable suspicion for the initial stop of Appellant's vehicle.

## II. *Presentence Incarceration*

**¶19** In sentencing Appellant, the trial court credited him for 119 days of presentence incarceration, ostensibly because he was arrested and placed in custody on January 1, 2014, and remained in custody until his sentencing on April 30, 2014.[8] Appellant claims he should be credited for an additional sixteen days of presentence incarceration based on time he spent in custody before absconding in 1988. The State concedes Appellant should be credited for additional presentence incarceration, but argues Appellant is only entitled to fourteen additional days of credit.

**¶20** Because Appellant did not raise the issue of presentence incarceration credit below, we review his claim for fundamental, prejudicial error. *See Henderson*, 210 Ariz. at 567-68, ¶¶ 19-20, 115 P.3d at 607-08. A trial court's failure to grant a defendant full credit for presentence incarceration constitutes such error. *See State v. Ritch*, 160 Ariz. 495, 498, 774 P.2d 234, 237 (App. 1989). Appellant bears the burden of establishing his entitlement to additional credit for presentence incarceration. *See State v. Cecena*, 235 Ariz. 623, 625, ¶ 10, 334 P.3d 1282, 1284 (App. 2014).

**¶21** Under A.R.S. § 13–712(B), "[a]ll time actually spent in custody pursuant to an offense until the prisoner is sentenced to imprisonment for such offense shall be credited against the term of imprisonment." This calculation includes the first and last days of custody, even if they are partial days. *See Carnegie*, 174 Ariz. at 454, 850 P.2d at 692.

**¶22** Appellant argues he should be credited for sixteen additional days' presentence incarceration for April 12 (the night he was arrested) through April 27, 1988 (the day he concedes he was released pending trial). The State concedes Appellant was incarcerated during this period, with the exception of April 14.[9] The record regarding this issue is not a model of clarity, and the available documents could reasonably be read to support

---

[8] Custody commences when a defendant is booked into a detention facility, *State v. Carnegie*, 174 Ariz. 452, 453-54, 850 P.2d 690, 691-92 (App. 1993), but does not include the date sentence is imposed. *State v. Hamilton*, 153 Ariz. 244, 245-46, 735 P.2d 854, 855-56 (App. 1987).

[9] The State argues Appellant posted bond and was released on April 13, but the release order was revoked and Appellant was placed back in custody on April 15, where he remained until his release on April 27.

any number of possible scenarios, including those posited by Appellant and the State. The record, however, is clear that Appellant spent some time in custody in April 1988, and the State has conceded Appellant should be credited for all but one of the days he requests. Given the limited record before us, the State's concession, and the fact Appellant bears the burden of establishing his entitlement to additional credit for presentence incarceration, *see Cecena*, 235 Ariz. at 625, ¶ 10, 334 P.3d at 1284, we conclude Appellant is entitled to fifteen additional days' credit for his time in custody in 1988.[10] Pursuant to A.R.S. § 13-4037, we modify the sentencing minute entry to reflect fifteen additional days of presentence incarceration credit, or a total of 134 days' presentence incarceration credit.

## CONCLUSION

**¶23** Appellant's conviction is affirmed. The sentencing minute entry is modified to reflect credit for fifteen additional days of presentence incarceration, for a total of 134 days' credit.



Ruth A. Willingham · Clerk of the Court
FILED: RT

---

[10] The State's argument that Appellant should receive fourteen (rather than fifteen) days' credit for the periods April 12 through 13 (two days) and April 15 through 27 (thirteen days) appears to be due to a math error. Based on the days conceded by the State, Appellant should be credited for fifteen additional days of presentence incarceration.