IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee*,

*v.*

ANGEL PETE RUIZ,
*Appellant*.

No. 2 CA-CR 2015-0036
Filed April 27, 2016

———————————————

Appeal from the Superior Court in Pima County
No. CR20135012003
The Honorable Deborah Bernini, Judge

**AFFIRMED IN PART; VACATED IN PART**

———————————————

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Tanja K. Kelly, Assistant Attorney General, Tucson
*Counsel for Appellee*

Harriette P. Levitt, Tucson
*Counsel for Appellant*

**OPINION**

Judge Miller authored the opinion of the Court, in which Presiding Judge Vásquez and Chief Judge Eckerstrom concurred.

M I L L E R, Judge:

**¶1**     After a jury trial, Angel Ruiz was convicted of multiple counts arising out of the armed robbery and attempted armed robbery of two witnesses to a large marijuana theft. He was sentenced to a combination of consecutive and concurrent sentences totaling 47.25 years. On appeal, Ruiz contends the detective who stopped him lacked reasonable suspicion, his constitutional right against double jeopardy was violated by the trial court's apparent grant and then denial of his motion for judgment of acquittal, and there was insufficient evidence for the jury to convict him of attempted aggravated robbery and attempted armed robbery as to one of the two victims. We affirm in part and vacate in part.

**Factual and Procedural Background**

**¶2**     We view the facts in the light most favorable to sustaining the jury's verdicts. *State v. Abdi*, 236 Ariz. 609, n.1, 343 P.3d 921, 922 n.1 (App. 2015). In November 2013, a homeland security agent, A.C., was conducting undercover surveillance at a truck stop, tracking a load of marijuana in a specific tractor-trailer. While A.C. watched, a sport utility vehicle (SUV) and a sedan circled the parking lot, stopping near the target tractor-trailer. Six to eight men got out of the vehicles, opened the trailer, and moved bales of marijuana from the trailer to the sedan. A.C. called for backup, but the vehicles sped away before it arrived.

**¶3**     A civilian, L.H., approached A.C. to share that he had just witnessed the incident. L.H. and A.C. were standing at the back of the open trailer when the SUV returned. Three people jumped out of the SUV, pointed guns at L.H. and A.C., and ordered them to get on the ground. One man, later identified as Anthony Ybave, pointed a gun at the back of L.H.'s head, patted him down, and

removed an envelope containing about $380 from his pocket. Ybave then pointed his gun at A.C.'s head and patted him down. The men moved more marijuana to the SUV until sirens could be heard in the distance and A.C. told the suspects the police were coming.

¶4        Two of the men left in the SUV, but crashed a short distance away and fled on foot into the desert. While the search for suspects was ongoing, a truck driver told a detective that a man had approached him in the truck stop and asked for a ride. The detective entered the truck stop and found Ruiz, who matched the description given by the truck driver. Ruiz was breathing heavily, his hands were shaky, and he looked disheveled. The detective took him outside for a one-person "show-up," and L.H. immediately identified Ruiz as one of the three men from the SUV. Ruiz's DNA[1] was found on a cellular telephone near the crash site; the telephone also contained photographs of Ruiz and text messages addressed to him.

¶5        Ruiz was charged with two counts each of aggravated robbery, armed robbery, kidnapping, and aggravated assault, and one count each of burglary and possession of marijuana for sale. During trial, one of the aggravated robbery counts was amended to attempted aggravated robbery and one of the armed robbery counts amended to attempted armed robbery. Ruiz was convicted on all counts and sentenced as described above. This timely appeal followed.

## Motion to Suppress Stop

¶6        Ruiz argues the trial court erred by denying his motion to suppress evidence obtained by the detective during his initial questioning and the resulting show-up. He contends the interaction was a *Terry*[2] stop that was unsupported by reasonable suspicion. "Whether there is a sufficient legal basis to justify a stop . . . is a mixed question of fact and law. We review the trial court's factual

_____

[1]Deoxyribonucleic acid.

[2]*Terry v. Ohio*, 392 U.S. 1 (1968).

3

findings on the motion to suppress for an abuse of discretion, but we review its ultimate legal determination de novo." *State v. Evans*, 237 Ariz. 231, ¶ 6, 349 P.3d 205, 207 (2015) (citation omitted).

¶7        The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Pursuant to that amendment, in appropriate circumstances and in an appropriate manner, a law enforcement officer may "approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22-23 (1968). A *Terry* stop is a seizure under the Fourth Amendment where the officer "restrains [the person's] freedom to walk away." *Id.* at 16; *see also United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (person seized if, under totality of circumstances, reasonable person would have believed he was not free to leave). Such a stop is constitutional at its inception "'if supported by reasonable suspicion' that criminal activity is afoot." *State v. Rogers*, 186 Ariz. 508, 510, 924 P.2d 1027, 1029 (1996), *quoting Ornelas v. United States*, 517 U.S. 690, 693 (1996); *see also State v. Winegar*, 147 Ariz. 440, 446, 711 P.2d 579, 585 (1985) ("'[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion.'"), *quoting United States v. Hensley*, 469 U.S. 221, 229 (1985).

¶8        "'Reasonable suspicion is something short of probable cause,'" *State v. Teagle*, 217 Ariz. 17, ¶ 25, 170 P.3d 266, 272 (App. 2007), *quoting State v. O'Meara*, 198 Ariz. 294, ¶ 10, 9 P.3d 325, 327 (2000), but more than a mere "inchoate 'hunch,'" *id.* In assessing whether reasonable suspicion exists to justify a stop, officers may rely on their training and experience "to make inferences from and deductions about the cumulative information available to them." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The officer's assessment, like that of a reviewing court, is based on "'the totality of the circumstances—the whole picture' of what occurred at the scene." *Evans*, 237 Ariz. 231, ¶ 8, 349 P.3d at 208, *quoting United States v. Cortez*, 449 U.S. 411, 417 (1981). Furthermore, "[t]here is a gestalt to the totality of the circumstances test"—although each

individual factor may have a potentially innocent explanation standing alone, collectively they can amount to reasonable suspicion. *O'Meara*, 198 Ariz. 294, ¶ 10, 9 P.3d at 327; *accord Teagle*, 217 Ariz. 17, ¶ 29, 170 P.3d at 274.

¶9        When reviewing a trial court's ruling on a motion to suppress, we view only the evidence presented at the suppression hearing in the light most favorable to sustaining the court's ruling. *State v. Gay*, 214 Ariz. 214, ¶ 4, 150 P.3d 787, 790 (App. 2007). In this case, an armed robbery had recently occurred outside the truck stop, and the robbers' getaway vehicle had crashed just behind the parking lot. Detective Hernandez got a tip from a truck driver that a man wearing a gray shirt and glasses had asked him for a ride. Although asking someone for a ride has a potentially innocent explanation, under the totality of the circumstances, Hernandez reasonably could have inferred that a robber whose getaway vehicle had just crashed nearby, moments before law enforcement arrived, would have an urgent reason to look for a ride. *See Arvizu*, 534 U.S. at 273. Hernandez saw Ruiz inside the truck stop wearing identical clothes and glasses to those described by the witness. When Hernandez approached him, he appeared nervous and his voice was shaking.

¶10        Under the totality of the circumstances, at that point Hernandez had a reasonable and articulable suspicion that Ruiz had been involved in the recent armed robbery just outside the truck stop. Accordingly, Hernandez did not violate Ruiz's rights under the Fourth Amendment by stopping him long enough to complete a one-man show-up with one of the victims still present at the scene. *See Winegar*, 147 Ariz. at 446, 711 P.2d at 585. The trial court did not abuse its discretion in denying the motion to suppress the identification of Ruiz obtained during the show-up.

**Double Jeopardy**

¶11        Ruiz contends the trial court violated the constitutional prohibition against double jeopardy when it initially indicated it would grant his motion for judgment of acquittal on two counts during trial, but then permitted a response from the state before concluding the motion should be denied. He did not object below,

therefore we review for fundamental, prejudicial error. *State v. Musgrove*, 223 Ariz. 164, ¶ 10, 221 P.3d 43, 46 (App. 2009). A double jeopardy violation constitutes fundamental error. *Id.* We review de novo whether a double jeopardy violation occurred. *State v. Nereim*, 234 Ariz. 105, ¶ 22, 317 P.3d 646, 652-53 (App. 2014).

¶12 The Double Jeopardy Clause of the Fifth Amendment prohibits reexamination of an acquittal even when granted by a judge before a jury verdict. *Smith v. Massachusetts*, 543 U.S. 462, 466-67 (2005). "[S]ubjecting the defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause." *Smalis v. Pennsylvania*, 476 U.S. 140, 145 (1986). Ruiz moved for a judgment of acquittal during trial, and the counts were later submitted to the jury; therefore, after the court's ruling, Ruiz was subjected to further "'factfinding proceedings going to guilt or innocence.'" *See Smith*, 543 U.S. at 467, *quoting Smalis*, 476 U.S. at 145. The question, then, is whether the judge's initial statements regarding the motion constituted a judgment of acquittal. *Id.*

¶13 Three Arizona cases provide guidance for this fact-intensive inquiry: *State v. Newfield*, 161 Ariz. 470, 778 P.2d 1366 (App. 1989), *State v. Millanes*, 180 Ariz. 418, 885 P.2d 106 (App. 1994), and *State v. Musgrove*, 223 Ariz. 164, 221 P.3d 43 (App. 2009). In *Newfield*, on which the state relies, the trial court initially stated, "To the extent that your judgement of acquittal under Rule 20 requests an acquittal on a Class 4 felony, that will be granted," and then reversed its ruling after a brief discussion with counsel. 161 Ariz. at 471, 778 P.2d at 1367. On appeal, we concluded there had been no double jeopardy violation because of the "continuing discussion between the court, the prosecutor, and defense counsel," and the ultimate denial of the motion, also reflected in the minute entry. *Id.* at 472, 778 P.2d at 1368. In *Millanes*, the trial court granted an acquittal, the state twice sought reconsideration, and the court ultimately reversed its ruling. 180 Ariz. at 419, 885 P.2d at 107. On appeal, we reversed, relying on the trial court's restatement of its dismissal in response to the state's first motion for reconsideration and the fact that the minute entry reflected both the dismissal and the reversal after a recess. *Id.* at 422, 885 P.2d at 110. Finally, in *Musgrove*, the defendant moved for a judgment of acquittal, and the

state submitted the issue on the evidence without argument. 223 Ariz. 164, ¶ 11, 221 P.3d at 46. The court granted the Rule 20 motion as to the conspiracy charge, and when the state indicated confusion, the court stated, "'I DV'd the conspiracy.'" *Id.* ¶ 11. The state asked to argue its position and the court stated it would not change its mind; after argument, however, the court reversed its ruling. *Id.* The minute entry reflected the acquittal. *Id.* We distinguished *Newfield* because the motion in that case had only been considered but not decided before denial. *Id.* ¶ 14. We vacated the conviction, holding that double jeopardy attaches immediately, and no break in proceedings is required. *Id.*

¶14 In this case, the trial court suggested it would dismiss counts two and four, the robbery counts related to A.C., because Ybave[3] had not taken anything "from [A.C.'s] person or immediate presence" as required by the aggravated and armed robbery statutes. *See* A.R.S. §§ 13-1902(A), 13-1903(A), 13-1904(A). Agreeing with the court's initial observations, Ruiz moved for judgment of acquittal pursuant to Rule 20(a), Ariz. R. Crim. P. After the state argued that L.H.'s money had been taken from A.C.'s immediate presence, the court stated, "I am going to dismiss Counts Two and Four. Those are the armed robbery and aggravated robbery [counts] pertaining as to [A.C.]." The state then sought rebuttal, arguing the pat-down of A.C. constituted attempt, and requesting that the counts be amended accordingly. The trial court allowed the amendment and denied the Rule 20 motion. The minute entry reflects the initial dismissal, but three lines below the dismissal it reads, "IT IS ORDERED State's motion for amendment of Counts 2 and 4 is GRANTED; therefore, the Court reverses its prior ruling, thereby not dismissing Counts 2 and 4."

¶15 Here, the trial court's statement that it is "going to dismiss" is ambiguous. Generally, "going to," as used here, "[e]xpress[es] a plan or intention that something will happen (usually soon), or mak[es] a prediction that something will happen, based on present events or circumstances." *Go*, Oxford English Dictionary Online (Oxford Univ. Press 2015). The statement may be

---

[3]The state argued Ruiz was liable as an accomplice.

a prediction of an action in the future, or, as Ruiz notes, the speaker's decision may already be made and action may be immediate. Moreover, the remainder of the transcript does not clarify whether the court merely predicted dismissal or intended immediate dismissal.

**¶16** But as in *Millanes* and *Musgrove*, the minute entry unambiguously states that it granted the motion, which is then followed by an equally clear statement that the court reversed its prior ruling. *Musgrove*, 223 Ariz. 164, ¶ 11, 221 P.3d at 46; *Millanes*, 180 Ariz. at 419, 424, 885 P.2d at 107, 112. This clarifies that the trial court actually did dismiss counts two and four before reconsidering the ruling.[4] Because we find *Millanes* and *Musgrove* controlling,[5] we

---

[4]A discrepancy between a transcript and a minute entry may be resolved by reference to the transcript. *See, e.g.*, *State v. Ovante*, 231 Ariz. 180, ¶ 38, 291 P.3d 974, 982 (2013) (when discrepancy can be clearly resolved by reference to record, oral pronouncement of sentence controls over minute entry). Here, the transcript was ambiguous rather than in conflict with the minute entry; therefore, the minute entry clarifies the oral statement.

[5]We observe that our supreme court has not definitively addressed this issue. The United States Supreme Court has stated that double jeopardy principles do not prevent the prosecution from "seek[ing] to persuade the court to correct its legal error before it rules, or *at least before the proceedings move forward*." *Smith*, 543 U.S. at 474 (emphasis added). Federal circuit courts have relied on that statement to find no double jeopardy violation even where significant amounts of time have passed but trial has not proceeded. *See, e.g.*, *United States v. Hill*, 643 F.3d 807, 867 (11th Cir. 2011) (95 pages of transcript between acquittal and reversal contained only arguments on various motions); *United States v. Lucas*, 516 F.3d 316, 337-38 (5th Cir. 2008) (acquittal reversed after weekend recess but before trial progressed). Nonetheless, we are generally bound by our previous decisions and, although they are very strict, we cannot say they were incorrectly decided. *See State v. Dungan*, 149 Ariz. 357, 361, 718 P.2d 1010, 1014 (App. 1985) (previous decisions highly persuasive and binding unless court is convinced prior decision is clearly erroneous or conditions have changed).

hold the trial court's reversal of its ruling and amendment of counts two and four violated Ruiz's right against double jeopardy.[6]

## Disposition

**¶17**         We vacate Ruiz's convictions and sentences for attempted aggravated robbery and attempted armed robbery, and affirm his remaining convictions and sentences.

---

[6] Because we vacate Ruiz's convictions and sentences on counts two and four, we need not address his alternative argument that there was insufficient evidence supporting those convictions.